## LEIMGRUBER, ADMINISTRATOR, v. LEIMGRUBER.

[No. 21,130.   Filed November 24, 1908.   Rehearing denied June 2, 1909.]

1. PLEADING.—*Complaint.—Claims Against Decedents' Estates.—Specificness.*—A claim against a decedent's estate, sufficiently succinct and definite to exhibit a *prima facie* right to recover, is sufficiently specific (§2828 Burns 1908, §2310 R. S. 1881). pp. 373, 380.

2. PLEADING.—*Complaint.—Claims Against Decedents' Estates.*—A claim by a husband against the estate of his wife, showing that she had received certain sums for his use and benefit, and that he had paid, at her request, certain sums, and detailing the agreements between them relative thereto, is sufficient on demurrer. p. 374.

3. APPEAL.—*Overruling Motion to Make More Specific.—When Harmless.*—To constitute reversible error, the overruling of a motion to make more specific must be shown affirmatively to have injured the appellant. p. 374.

4. TRIAL.—*Special Findings.—Ownership of Bank Deposits.—Decedents' Estates.*—Special findings, in a claim by a husband against the estate of his wife, that money for a bank account in her name, marked "Special," was deposited by him out of his money, and that she deposited in her name as "Agent," without his knowledge, another sum, using his money, that she paid on her debts out of such "Agent" account $650, and that the husband subscribed and paid for certain shares of building and loan stock, having the same issued in her name, such deposits

and stock being placed in her name to prevent any possible claimant against him from obtaining same, support conclusions of law that such property belonged to the husband. pp. 375, 381.

5. CONTRACTS.— *Husband and Wife.— Disabilities.*— A married woman has power to contract generally, but is forbidden to become surety, or, by herself, to make any contract for the sale or encumbrance of her real estate. p. 378.

6. HUSBAND AND WIFE.—*Contracts.—Burden of Proof.*—A wife may contract with her husband, but on account of his presumed dominant influence, he is required to show clearly that his contract was fair to her. p. 378.

7. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting evidence. p. 379.

8. EVIDENCE.—*Declarations of Decedent in Absence of Claimant.*— The declarations of a deceased wife, made in the absence of her husband, in reference to the title to a bank account in her name, are inadmissible as evidence-in-chief on behalf of her estate on the trial of her husband's claim to such deposit. p. 379.

9. EVIDENCE.—*Repetition of.—Discretion of Court.*—Whether a witness shall be compelled to repeat his testimony is largely discretionary with the trial court. p. 379.

10. TRIAL.—*Venire de Novo.—Special Findings.*—A motion for a *venire de novo* applies to special findings only where they are so uncertain, ambiguous or defective that no judgment can be rendered thereon. p. 380.

From Decatur Circuit Court; *Marshall Hacker,* Judge.

Claim by William F. Leimgruber against William F. Leimgruber, as administrator of the estate of Mary M. Leimgruber, deceased. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Wickens & Osborn, Ulric Z. Wiley* and *Arthur H. Jones,* for appellant.

*Bennett & Davidson,* for appellee.

HADLEY, J.—William F. Leimgruber, being the administrator of his wife's estate (Mary M. Leimgruber, deceased), filed a personal claim against his decedent's estate, for money had and received for the benefit of the claimant, for more than $12,000. Deeming the claim of sufficient importance, the court appointed Wickens & Osborn, reputable attorneys, to defend on behalf of the estate. There was no special an-

swer. The cause was submitted for trial, and upon request the court returned a special finding of facts and conclusions of law thereon. The finding was in favor of the claimant for $6,771.27. A motion for a new trial was denied to the administrator, and he appeals.

The first question we are called upon to decide is the correctness of the court's action in overruling appellant's motion to make the claim more specific.

The complaint was in a single paragraph, and was in these words:

"To money had and received by decedent for the use and benefit of the claimant, William Leimgruber, from June, 1898, to April, 1906, and which is due and unpaid... $7,445.64

For money paid by the claimant, William Leimgruber, for the use and benefit of the decedent, and at her request to Mary J. Hart and Jessie Woodfill, upon the following dates and for the following amounts, to wit:

| | | |
|---|---|---|
| Oct.  25, 1898................$395.50 | | |
| do ...................... 400.00 | | |
| Nov.  22, 1899................ 367.50 | | |
| do ...................... 400.00 | | |
| Dec.   6, 1900................ 291.00 | | |
| do ...................... 509.00 | | |
| Dec.  23, 1901................ 260.46 | | |
| do ...................... 489.54 | | |
| Jan.   5, 1903................ 231.00 | | |
| do ...................... 469.00 | | |
| Jan.   5, 1904................ 202.94 | | |
| do ...................... 597.06 | | |
| Jan.   5, 1905................ 167.16 | | |
| do ...................... 685.00 | 5,465.16 |

$12,910.80

That in June, 1898, claimant, William Leimgruber, husband of the decedent, engaged in the saloon business in the city of Greensburg, Indiana, and was engaged in said business in said city continuously until April 26, 1906, the

date of decedent's death; that, while so engaged in said business, claimant and said decedent agreed that the money derived from said business should be deposited in the name of decedent in the Citizens National Bank of Greensburg, Indiana, and the Workingmen's Building and Loan Association of Greensburg, Indiana, the title to said money so to be deposited to be and remain in claimant and be the property of claimant; that, in pursuance of said agreement, there was placed in said building and loan association a sum which, together with accrued dividends thereon, now amounts to $1,662.80; that in pursuance of said agreement, there was deposited in said bank, in the name of the decedent, the money derived from said saloon business, and the property of claimant, which amounted to many thousands of dollars; that from said moneys so deposited there was drawn out by claimant, for his expenses and for the conduct of said business, a large sum, to wit, $——; that there was drawn from said money so deposited the sum of $5,465.16, which sum was paid, at the request of the decedent, and for her use and benefit, to Mary J. Hart and Jessie Woodfill; that the further sum of $650 was paid to Ann Murray, for the use and benefit of decedent and at her request, leaving as a balance, in said bank, on April ——, 1906, of said money so deposited as aforesaid and the property of claimant, the sum of $5,132.84, and leaving in said building and loan association, with accrued dividends, the sum of $1,662.80; that by reason of the foregoing facts there is now due and owing to this claimant from said decedent's estate the sum of $12,910.80, which sum is unpaid.''

The claim was duly verified. The motion to make more specific requested the court to require the claimant to show that when the decedent and claimant made the agreement it was agreed that the money derived from the saloon business should be deposited in the Citizens National Bank, and in the

Workingmen's Building and Loan Association, in decedent's name, and should be the property of the claimant; and to show the particular sums, and the times when said moneys were deposited in said bank and in the loan association, as the property of the claimant, under said agreement, and to show the amount drawn out of the funds deposited and used in conducting the saloon business. It is not necessary, under §2828 Burns 1908, §2310 R. S. 1881, in presenting a claim against a decedent's estate, to present a formal complaint, but it will be deemed sufficient if there is filed such a "succinct and definite statement" of the facts as will exhibit a *prima facie* claim. *Stanley's Estate* v. *Pence* (1903), 160 Ind. 636; *Miller* v. *Eldridge* (1891), 126 Ind. 461; *Stricker* v. *Barnes* (1890), 122 Ind. 348.

We see no reason why the pleading is not good on demurrer, as presenting a legal demand against the estate. It will be observed that the averments appearing in the latter portion of the pleading are wholly in explanation of the two foregoing items. The pleading shows that the date of the agreement was within the statute of limitations. It exhibits the net amount of the sums received by the decedent under said agreement, and that the same was unpaid. This states a *prima facie* claim under the authorities given.

2.

The overruling of the motion to make the claim more specific was so largely a matter of discretion with the trial judge that, to constitute it reversible error on appeal, it is necessary for the mover to show that he was in some way injured by the denial. *Cincinnati, etc., Railroad* v. *Miller* (1905), 36 Ind. App. 26; *Phoenix Ins. Co.* v. *Rowe* (1888), 117 Ind. 202. In the case last cited the court said, by Mitchell, J.: "While the granting or refusing of such motions is not a matter wholly within the discretion of the *nisi prius* courts, it is nevertheless so far discretionary that a reversal would not follow, except in a case

3.

where it appeared that the rights of the party complaining may have suffered.'' As the claim stood, the same evidence was admissible as would have been if the motion had been granted and enforced, and it is not suggested how the estate would have been better advised of what it had to meet. There was no reversible error in overruling the motion.

The special findings disclose that William Leimgruber was married in November, 1897. At the time of the marriage, Mary M. Leimgruber was the owner of real estate of the value of $11,000, upon which there was a mortgage for $5,650 in favor of Mary J. Hart and Jessie Woodfill. Mary M. died on April 26, 1906, the owner of real estate of the value of $11,650, which was encumbered by a mortgage of $2,148. The wife's real estate was her only source of income while she was the wife of claimant, except $301 inherited from deceased relatives. The claimant, from June, 1898, until after the death of his wife, April 26, 1906, was engaged in the saloon and lunch business in Greensburg, under a license issued in his name. At the beginning of his business in June, 1898, the claimant opened an account with the Citizens National Bank, in his own name, and continued the same in his own name until July 23, 1901, when his said account, being overdrawn for $2.50, was settled and closed, and no other account in the name of the claimant was thereafter opened, or kept, in that or any other bank in Greensburg in the name of the claimant during the lifetime of his wife. During the time claimant maintained his said account with the Citizens National Bank, from June 14, 1898, to July 23, 1901, he deposited therein all receipts from his saloon business, amounting to $18,291. After July 23, 1901, the claimant deposited in said bank the proceeds of said saloon and lunch business in the name of ''Mary M. Leimgruber, Special,'' and from July 9, 1901, to April 25, 1906, the day before his wife's death, there was deposited to said account of ''Mary M. Leimgruber, Special,'' from the

moneys received from said saloon and lunch business, all of which money belonged to the claimant, the sum of $22,667. During the same period all bills pertaining to said business and the family expenses of claimant were paid by claimant's drawing his checks on said "special" account, and at the time of the death of claimant's wife there was a balance remaining of said account of $266.45. The claimant deposited the money derived from the saloon and lunch business in the name of "Mary M. Leimgruber, Special," for the purpose of making it appear that he had no money in bank, in the event that he should be prosecuted and convicted of a violation of the liquor laws, and the claimant did not make a gift of said money to his wife, and it was not his intention to give her any money that he had or should acquire from his business. Beginning in October, 1898, and continuing until April 24, 1906, there was a further account kept at said bank in the name of "Mary M. Leimgruber, Individual," and up to the time of Mary M. Leimgruber's death there was deposited to this account $8,036, and from which account all payments on the Hart and Woodfill mortgage, noted in the claim, were made, amounting to the sum of $5,465.15. On July 8, 1901, the decedent drew her check against the account of "Mary M. Leimgruber, Special," for $723.77, and with it opened a further account in said bank in the name of "Mary M. Leimgruber, Agent," and continued to make additional deposits thereto from time to time, paid therefrom a personal debt of $650 to Ann Murray, and at the time of her death had a balance to her credit of $4,157.82, all of which deposits were made with the claimant's money, and without his knowledge and consent. In 1900 the claimant subscribed for ten shares of stock in a local building and loan association, in the name of his wife. He paid all fees and all dues from his own money, retained absolute possession of the passbook, and said stock, at the death of his wife, had a cash book value, from weekly dues

and dividends, of $1,697.60. The building and loan stock, and the balance appearing in each of the three bank accounts, at the time of the decedent's death were invoiced and appropriated as assets of her estate.

On the foregoing facts, the court stated conclusions of law, to the effect that the claimant was entitled to recover from his wife's estate the balance existing in the accounts designated as "Mary M. Leimgruber, Agent," at the time of her death, and $650 shown to have been paid out of the "agent" account on the personal debt of the decedent, and the cash value of the building and loan stock, amounting in all to $6,771.87. As constituting the basis for the conclusions of law, that the balances in the "special" and "agent" accounts were the property of the claimant, it is directly found that the money paid into the "special" account proceeded from the saloon and lunch business of the claimant, and was kept in the bank by the latter in the name of "Mary M. Leimgruber, Special," as his own account. It was treated by both as the husband's money—by the husband, who listed the saloon property for taxation in his own name during the entire period, with the exception of one year, and by checking on the account to meet his family expenses, as well as to maintain the saloon, in short, by the exercise of absolute control and dominion over it; by the wife, who, on the other hand, except for the single instance when she started her "agent" account, treated the "special" as belonging to another. She made no checks against it, no deposits to it, and at the same time maintained in the bank her own undisputed account, designated as "Mary M. Leimgruber, Individual." The designation of this latter account was, in substance, an acknowledgment on her part that the other two accounts then running in her name in the same bank, namely, the "special" and "agent," were not her deposits. It was a notice by her that the two latter were to be distinguished from her individual account. The one marked "agent" was a positive declaration that the deposit was not hers, but belonged to a

principal. The treatment of the several accounts by the parties, as found by the court, and the books of the bank make it clear that the balance found àt the decedent's death in the "special" and "agent" accounts belonged to the claimant. The $650 paid on her personal debt, contracted in the purchase of real estate in her own name, was clearly shown to have been paid from the "agent" account, which, as we have seen, was created and maintained with the claimant's money, and without his knowledge and consent. With respect to the building and loan stock, the finding is, in effect, that the claimant subscribed for himself, in the name of his wife, and maintained it without the knowledge of his wife. Under the finding there was no delivery, and no gift of the stock to the wife.

Under our statutes, a married woman has the power to contract as a *feme sole,* except that she is forbidden to convey or encumber her real estate, or enter into a contract as surety for another. §7855 Burns 1908, §5119 R. S. 1881. She may carry on business on her own separate account, and in relation to her personal estate may make any contract she chooses. §7853 Burns 1908, §5117 R. S. 1881.

On her part, a married woman may deal with her husband as with a stranger, but the husband, on account of his presumed superior, dominant influence, to bind his wife, must clearly establish the contract, and show that it is fair to her and free from overreaching. *Harrell* v. *Harrell* (1889), 117 Ind. 94; *Arnold* v. *Engleman* (1885), 103 Ind. 512; *Wilson* v. *Wilson* (1888), 113 Ind. 415; *Gosnell* v. *Jones* (1899), 152 Ind. 638. There is nothing in the findings to indicate unfairness to the wife, or that any advantage was taken of her. At the time of the marriage she was the owner of an estate consisting of real property in Greensburg, of the value of $11,000. During her coverture of eight years, she kept her property in repair, increased her holdings, by an additional purchase, to the value of $11,650,

paid a personal mortgage indebtedness of $5,465.15, and at the time of her death had a balance in bank to her credit of $708.57.

Appellant makes complaint that the special finding of facts, as a whole, and certain specific facts set forth, were not sustained by sufficient evidence, and are contrary to law. Concerning the items particularly complained of, and also the findings as a whole, the evidence was conflicting, and the trial court, having had the witnesses before it, and a superior opportunity to judge of their credibility, reached conclusions that all the findings were sufficiently proved, and, under the circumstances, it is not within our province to overthrow them.

The claimant had offered evidence in support of the issue, that the decedent, with claimant's money, and without his knowledge and consent, had created and maintained at the bank the "agent" account, and during the examination of one of the defendant's witnesses she was asked the following question: "What did your mother say about the money in the 'agent' book, as to where it came from?" Upon the defendant's objection, the court held the question improper, and appellant insists that the ruling was error. We think not. It was the party's own witness. The question was addressed to no particular time, or place, or act, and, being in the absence of the claimant, called for a purely self-serving statement.

George Bruce, secretary of the Workingmen's Building and Loan Association, a witness for the claimant, in testifying concerning the claimant's subscription to the stock of said association, and the issuance to him, by the witness, of the building and loan pass-book, was permitted by the court to state the conversation, or state what was said by the parties at the time, as a part of the transaction. Whereupon, on cross-examination, appellant's counsel asked the witness the following question relating to said conversation: "I will ask you if the conversation you

have just recited was a part of the transaction in the issuing of that book?'' It will be observed that the question propounded did not relate to any particular statement or part of the conversation, but was, in effect, whether the conversation, as a whole, and the issuance of the pass-book, were parts of the same transaction. The witness had just answered that they were, and we think it was a matter of discretion with the court to require or refuse a repetition of the answers; furthermore, we do not see how appellant was injured by the exclusion of the answer.

Appellant's motion for a *venire de novo,* because the special findings of the court are so uncertain, indefinite and ambiguous that no judgment can be entered thereon, was overruled. Other reasons assigned were causes for a new trial, but not for a *venire de novo.* The latter motion does not apply to special verdicts, or to special findings, unless the special verdict or special findings are so uncertain, ambiguous, or otherwise defective that no judgment can be rendered thereon. *Maxwell* v. *Wright* (1903), 160 Ind. 515, 517. We have found that this is not such a case.

We find no error. Judgment affirmed.

## ON PETITION FOR REHEARING.

HADLEY, J.—Appellant's counsel present an extended argument in support of the petition for a rehearing. It is first insisted that this court erred in sustaining the lower court in overruling appellant's motion to make appellee's claim more specific. We have carefully read the argument presented by appellant, and reëxamined the claim as set out in full in the original opinion, and, considering that the claim fully sets out the nature of the demand, the dates and amounts of the several sums paid for the use of the deceased, the character of the claim for money had and received, and that all that was so claimed were certain deposits made in a local bank, and in a building and

loan association, as current proceeds from the saloon business, running through a period of more than seven years—all of which were matters of record, made by third parties, and easily accessible as evidence—we are satisfied to abide by the opinion formerly expressed on this point.

The most earnest criticism of the opinion, however, is founded upon an evident mistake in the opinion, to the effect that the basis of the conclusions of law was an agreement between the husband and wife that the money proceeding from the saloon business was to be deposited in the bank, in the name and style of "Mary M. Leimgruber, Special," but that the money should be and remain the property of the husband. The original opinion is modified so as to correct the misleading statement.

The facts shown by the special findings, as set forth in the opinion immediately preceding the statement referred to, clearly show that no such a statement could properly apply to the facts in the case, as determined by the trial court, and must, therefore, have been the result of a misprint, or inadvertence. The court did not find the existence of such an agreement beyond what may be inferred from other facts found, and no such an agreement is necessary, or at all important, to an affirmance of the judgment. It is evident that the wife was not ignorant of the husband's banking methods, for it is found as a fact by the court that she drew her personal check for $723.77 against the account running in the name of "Mary M. Leimgruber, Special," and with the proceeds opened a further account in the same bank, in the name of "Mary M. Leimgruber, Agent," which account she increased from time to time, so that at the time of her death she had to her credit as "agent" the sum of $4,157.82, and which account, the court finds, was created and maintained with money belonging to the husband, and without his knowledge or consent. But it is of no consequence in the case whether the wife did, or did not, have knowledge of the "special" account.

We are bound by the facts as the court found them to exist. The findings show that the wife had nothing to do with creating and maintaining the "special" account, beyond yielding a passive assent thereto. The finding is that the account was opened in that style by the husband, and was maintained by him to the time of his wife's death, with his own money, which proceeded from his own business, and that he never intended to, and never did, give his wife any interest therein.

We agree with counsel that the law is correctly expressed in *Harrell* v. *Harrell* (1889), 117 Ind. 94, and other cases cited to the same point by appellant. The difficulty is, we have no such case before us as the court was considering in the actions to which we have been referred. In this case, the money claimed was not lent to the wife, was not given to her, and was not placed in her possession, or in the possession of another for her use. In other words, the finding of the court is to the effect that the husband never in any sense parted with his ownership and right to the money. Because he had a dishonest purpose in changing the style of his bank account from his own name to the name of his wife, Mary M. Leimgruber, "Special," did not of itself create a right in the wife to the account.

An analysis of the figures given in the original opinion, with respect to the wife's separate estates and income, shows that when she married she was the owner of real estate of the value of $11,000, encumbered by mortgage for $5,650; that by an additional purchase she had increased her real estate, at the time of her death, to the value of $11,650, and reduced her mortgage encumbrance thereon by $3,501.71, thus showing a betterment of her real estate, during her marriage, of $4,151.71.

Petition for rehearing overruled.