## WASHBURN v. GRAY.

[No. 7,456. Filed January 24, 1912.]

1. PRINCIPAL AND SURETY.—*Married Women.*—Under §7855 Burns 1908, §5119 R. S. 1881, providing that married women "shall not enter into any contract of suretyship," a married woman's contract of suretyship is void; and the test of determining suretyship is, in the absence of an estoppel *in pais*, whether she received, in person, or in benefit to her estate, the consideration upon which the contract depends. p. 273.

2. PRINCIPAL AND SURETY.—*Notes.—Mortgages.—Deeds.—Evidence.* —Evidence that a married woman owned a lot, that she erected a barn thereon, extending upon an adjoining lot five feet, that her husband purchased such adjoining lot, taking the title in his own name, for $1,500, $800 of which he obtained by a note secured by a mortgage on her lot, and $700 secured by a mortgage on the purchased lot, that when such notes and mortgages be-

came due he applied to the plaintiff for a loan of $1,800 with which to pay said notes and mortgages and to make certain improvements, that such wife and husband conveyed both lots to a trustee to reconvey them to the wife, that as a part of the consideration she assumed the payment of such notes and mortgages executed by the husband on her lot, that she subsequently sold that part of such adjoining lot not covered by her barn for $1,500, that the balance of the loan was paid to the husband and used by him, sustains a decree of foreclosure against the wife for the amount of the husband's notes and mortgages, and in her favor for the balance used by the husband. p. 274.

3. PRINCIPAL AND SURETY.—*Married Woman.—Assumption of Void Obligation.*—An agreement by a married woman, as a part of the purchase price of a lot, to pay a void debt contracted by her, is valid. p. 276.

From Cass Circuit Court; *James P. Wason*, Special Judge.

Suit by John Gray against Bertha M. Washburn. From a decree for plaintiff, defendant appeals. *Affirmed.*

*Lairy & Mahoney* and *McConnell, Jenkines, Jenkines & Stuart,* for appellant.

*George W. Funk* and *John C. Nelson,* for appellee.

MYERS, J.—This was a suit to foreclose a mortgage executed by appellant and her husband to appellee, on real estate owned by appellant.

No question is presented on any of the pleadings. The court made a special finding of facts and stated its conclusions of law thereon. The sum found to be due to appellee from appellant, on account of the notes and mortgage in suit, attorneys' fees, and premium for insurance paid, was $1,939.30, and a decree was entered foreclosing the mortgage, and ordering the mortgaged property sold.

Appellant's motion for a new trial was overruled, and this ruling is the basis for her only assignment of error. The causes for a new trial are that the finding of the court (1) is contrary to law; (2) is not sustained by sufficient evidence.

It is claimed by appellant that at the time of the execution

of the notes and mortgage in suit she was a married woman, and that George P. Washburn was her husband; that the money evidenced by the notes and secured by the mortgage was applied to the payment of the husband's debts, and that she received no part of it, of which facts the mortgagee had notice.

By statute (§7851 Burns 1908, §5115 R. S. 1881) all the legal disabilities of married women to make contracts were abolished, except as therein otherwise provided. One 1. of the exceptions is, that she "shall not enter into any contract of suretyship.", §7855 Burns 1908, §5119 R. S. 1881. With these statutes and the causes assigned for a new trial before us, we are called on to examine the evidence relative to the transaction between appellant and appellee, and to determine its legal effect. The question is, was appellant, in said transaction, obligated as principal, or was she surety for her husband?

In the outset it may be conceded that appellant was a married woman, and owned in her individual right real estate situated in the city of Logansport, Indiana, which she, her husband joining, on April 26, 1898, mortgaged to appellee to secure the payment of two promissory notes for $900 each, signed by her individually, due in two and four years after their date. If she executed said notes and mortgage as surety, and not as principal, they are void as to her. §7855, *supra; Merchants, etc., Bldg. Assn.* v. *Scanlan* (1896), 144 Ind. 11; *Ellis* v. *Baker* (1888), 116 Ind. 408. This leads us to inquire whether she received in person or in benefit to her estate the consideration upon which the contract depends. *Guy* v. *Liberenz* (1903), 160 Ind. 524; *Field* v. *Campbell* (1905), 164 Ind. 389; *Leschen* v. *Guy* (1897), 149 Ind. 17.

The evidence material to this question tends to prove, and the court found, that appellant, on June 25, 1890, purchased with her own money the property mortgaged. At the time

she acquired the title to it, it was encumbered by a
2.   mortgage to appellee for $1,600, which she thereafter
fully paid by check or certificate of deposit signed by
her, and by her husband delivered to appellee.  Thereafter,
and some time prior to September 14, 1895, appellant erect-
ed a barn upon what she supposed to be her own lot, but by
mistake about five feet of the south end of the barn extended
over onto a strip of ground fifty-five feet wide adjoining
her real estate on the south, owned by William Walker.
Said adjoining lot was for sale at a price of $1,500, and the
question of moving the barn or buying said strip of ground
was considered by appellant and her husband.  The hus-
band bought the Walker lot, paying therefor $800 in cash,
which he obtained from appellee by giving to the latter his
note calling for that amount, secured by a mortgage exe-
cuted by appellant and her husband on her property.  The
balance of the purchase money—$700—for the Walker lot
was secured by a mortgage on that lot, executed by George
P. Washburn and his wife to Walker.  The title to the lot
so purchased was taken in the name of the husband.  When
said note for $700 became due, George P. Washburn again
applied to appellee for a loan of $1,800, with which to pay
said notes for $800 and $700, and, as he claimed, the bal-
ance was for the purpose of making certain improvements
desired by appellant on her property.  On April 26, 1898,
the property so purchased by appellant's husband was by
Washburn and his wife conveyed by warranty deed to a
trustee, which deed provided that the trustee should trans-
fer the title to said lot to this appellant, and as a part of
the consideration for the transfer appellant was to assume
the payment of said mortgages held by appellee on her in-
dividual lot.  The deeds were made, and thereby appellant
was vested with the title to the Walker lot, variously esti-
mated to be worth from $1,500 to $1,800.  She thereafter
sold fifty feet of said lot for $1,500, retaining the five-foot
strip adjoining her lot on the south, and which she now

owns. The money evidenced by the two notes for $900 each was applied as follows: $734.60 in paying off the Walker mortgage; and appellee released the mortgage then held by him for $800. The balance of the money—$265.40—was paid to appellant's husband. Appellee had nothing to do with preparing said deeds and mortgage, and took no part in the arrangement made between appellant and her husband concerning the conveyance of the Walker lot to her. Appellant's husband looked after her property, made improvements, paid the taxes, and procured insurance thereon, and the preliminary negotiations between appellee and appellant, with reference to the mortgage in suit, were made through said husband, but were consummated in appellant's presence.

Appellant, on the face of the papers executed to appellee on April 26, became liable as principal to pay $1,800. The trial court found in favor of appellant and against appellee as to the item of cash paid to the husband. No cross-assignment of error is predicated on this finding, consequently that item need not be further considered. From the evidence it certainly appears that appellant became the owner of certain real estate of the reasonable value of from $1,500 to $1,800, then and theretofore owned by her husband. It must be admitted that her real estate holdings were extended on that day to include the Walker lot. There is plenty of evidence in the record tending to prove that fact, and that appellee had no knowledge to the contrary. She purchased it from her husband, who vested her with the title thereto through the medium of a trustee. She paid for it with money received from appellee, to whom she and her husband joined in a mortgage on her individual property, other than the Walker lot, to secure its repayment. So far as anything appears from the face of the papers executed on April 26, there is no law invalidating or prohibiting appellant from entering into any of the contracts to which she then became a party. The lot then owned by her husband

she had a right to buy from him, and her contract in that regard will be sustained when it appears that it was fair to her, and that she was not thereby overreached. *Leimgruber* v. *Leimgruber* (1909), 172 Ind. 370; *Clow* v. *Brown* (1906), 37 Ind. App. 172.

But it is argued, in effect, that she was overreached, for the reason that she had no use for the Walker lot, and that her income did not warrant her in incurring the necessary debt created by such purchase.

Whether she acted wisely in making the purchase was a question of sound business judgment under all of the facts and circumstances surrounding the particular transaction, and can have but little, if any, weight here, for the reason that ample consideration passed to her for the execution of the notes and mortgage. *Kedy* v. *Kramer* (1891), 129 Ind. 478. The fact that she afterwards sold fifty feet of the lot so purchased for practically enough to pay for all of it, reserving the five-foot strip immediately adjoining her other property on the south, and on which a part of her barn stood, conclusively shows a net profit to her estate from the Walker lot. The further fact that she used the proceeds arising from the sale of that part of the Walker lot sold for another purpose to pay her husband's debts—rather than to pay appellee's mortgage, cannot relieve her from liability as principal upon notes for which she received the consideration, although the transaction later may have resulted in a disappointment. She had the right to make the contract, and must be allowed to act on her judgment concerning what will benefit her or her estate. *Vogel* v. *Leichner* (1884), 102 Ind. 55.

The claim is made that because the mortgage covering the note for $800—the debt of her husband—was invalid, her agreement afterwards to pay the note was also invalid.

3. This contention, in the absence of a consideration for the new agreement, would be correct, but where it appears, as here, that there was ample considera-

United States, etc., Ins. Co. *v.* Batt—49 Ind. App. 277.

tion moving to her to support the new agreement, it will be upheld, and may be enforced against her, although she thereby agreed to pay her husband's debt. *Scott* v. *Collier* (1906), 166 Ind. 644; *Rinn* v. *Rhodes* (1884), 93 Ind. 389.

Judgment affirmed.

LAIRY, J., not participating.