158   647
160   641

## MASTERS, EXECUTOR, *v.* JONES ET AL.

[No. 19,842.   Filed May 27, 1902.]

EXECUTORS AND ADMINISTRATORS.—*Claim Against Decedent's Estate.—Care of Decedent by Member of Family.*—Adult daughters who took care of their father while he was insane, at the instance of his guardian, are not precluded from recovering from his estate compensation for such services by reason of the fact that prior to his insanity they resided with him as members of his family. *pp. 648–651.*

SAME.—*Guardian of Insane Person.—Care of Ward.*—The guardian of an insane person may by direction of the court, or subject to the subsequent approval of the court, employ a suitable person to care for his ward and furnish him with necessaries at the expense of the ward's estate. *pp. 650, 651.*

SAME.—*Claims Against Decedent's Estate.—Guardian of Insane Person.*—One who renders services for an insane person, under guardianship, at the instance of the guardian, may, at the death of the ward, enforce his claim against the estate of the deceased in the hands of his executor or administrator. *p. 652.*

SAME.—*Claims Against Decedent's Estate.—Pleading and Proof.—Variance.*—The rule that where the complaint is based upon an implied

Masters *v.* Jones.

contract a recovery cannot be had on an express contract does not apply to a mere statement of a claim filed against a decedent's estate. *pp. 652, 653.*

From Clinton Circuit Court; *J. V. Kent*, Judge.

Claims by Mary E. H. Jones and sisters against the estate of Daniel G. Jones, deceased. From a judgment allowing the claims, Thomas W. Masters, executor, appeals. Transferred to Supreme Court, under §1337u Burns 1901. *Affirmed.*

*J. C. Rogers* and *W. R. Moore*, for appellant.
*O. E. Brumbaugh* and *J. Combs*, for appellees.

JORDAN, J.—Appellees each in the lower court filed a separate claim against the estate of Daniel G. Jones for services rendered by the said claimants in and about the nursing of the said deceased, and for doing his washing, and for caring for him generally from the first day of April, 1894, to October 3, 1899. The executor, under the will, interposed a defense to each of these claims, and they were consolidated, and tried together before a jury, and a verdict returned in favor of each of the claimants, and over the motion of appellant for a new trial the court rendered judgment on the verdict against the estate of the deceased for the amount assessed by the jury. Appellant, as the executor, appeals, and contends that under the facts no liability against the estate of the testator is shown to exist in favor of either of the appellees upon the claims in dispute. The questions discussed by the parties to this appeal mainly arise out of the facts established by the evidence on the trial in the lower court. The following appear to be the material facts: Appellees are each over the age of twenty-five years, and are the unmarried daughters of Daniel G. Jones, appellant's decedent. The latter formerly resided on a farm owned by him situated in Clinton county, Indiana. Some time in the year 1890 he moved from his farm to the town of Rossville in said county. He was a widower, and his three

Masters *v.* Jones.

unmarried daughters, prior to his becoming insane, resided with him as members of his family, doing the necessary housework. Some time prior to April, 1894, said Jones became insane, and on April 10, 1894, in a proper proceeding, he was, by the Clinton Circuit Court, adjudged to be a person of unsound mind, incapable of managing his estate, and George Smith was by the court appointed the guardian of his person and estate. Immediately after his qualification as such guardian, he took charge of the affairs of his ward, and, it being necessary for him as such guardian to procure some one to care for and attend to his ward, he, about April 15, 1894, had a conversation with appellees, who were living at the time at the home of their father, in regard to employing a nurse to care for and attend to the wants of their father. Appellees informed the guardian that they could care for and nurse their father cheaper than any one else. Thereupon the guardian directed them to nurse and take care of him, and to do the best they could in caring for him, as his estate was amply able to pay them for their services; and further directed them to keep an account of their time, and file their claims against the estate; and thereupon appellees agreed to nurse and take care of their father, and this, the evidence discloses, they did from that time until his death on October 3, 1899, with the exception of the time he was in the insane asylum, as hereinafter mentioned. On June 12, 1894, he was sent to an asylum for treatment, where he remained until July 4, 1895, when he was returned to his home an incurable lunatic, and appellees, under the arrangement with the guardian, resumed the nursing and caring for him. After the death of his ward the guardian made his final settlement with the court, leaving the claims of appellees for their services unsettled, and unpaid. The facts show that, during the time appellees were engaged in performing the services in question, their father at times was violent in his actions, filthy in his habits by reason of his unfortunate condition, and required constant care and atten-

tion.  He frequently became violent at night, and hallooed
loud enough to be heard some distance away.  He was ob-
scene and profane in the use of language, and it was neces-
sary, at least a portion of the time, to keep him confined in
a room.

Counsel for appellant insist that under these facts this
case must be ruled by the familiar doctrine recognized and
asserted by numerous decisions of this court to the effect
that, where persons related to each other by blood or mar-
riage live together as members of a common family, there
is no obligation to pay for services rendered on one hand,
or for board, etc., furnished on the other in the absence of
an express promise, unless the circumstances surrounding
the case are of such a character or nature as to create, in the
eye of the law, an implied promise.  But the case at bar,
under the circumstances, does not fall within the prohibition
of this rule.  It is true that these claimants are shown to be
the adult daughters of the decedent, and prior to his insanity
they resided with him as members of his family, and were
living at the home of their father at the time they were em-
ployed by the guardian.  It is, however, further disclosed
that, after the appointment of the guardian for their father,
and after it became necessary that he should procure some
suitable person to attend to and care for his insane ward,
they, at his special instance and request, performed the serv-
ices in controversy under the arrangement or stipulation to
the effect that they were to be paid for the same out of the
ward's estate.  It is evident that under the law the guard-
ian, either at the direction of the circuit court in the first
instance, or, if not so directed, then subject to the subsequent
approval of the court, was authorized to employ some suit-
able person or persons to take the necessary and proper care
of his insane ward, and to furnish him with other necessaries
at the expense of his estate.  The reasonable charges to be al-
lowed against the estate were, of course, under all of the
circumstances, a question to be finally determined by the

court. In respect to the compensation to be allowed a person, either per day, week, or year, as the case may be, for services rendered in nursing and taking care of an insane ward, the court, on the application of a guardian, may fix or determine the same in advance; but, where such compensation is not previously fixed or determined by the court, the amount to be allowed in payment for such services will nevertheless be subject to the approval and judgment of the court. Where a guardian, under the statute, has been appointed for an insane person, such person is in a legal sense the ward of the court by which the appointment is made, and, together with his estate, is under the care and protection of such court, and the guardian serves in the discharge of his duties as the agency of the court. *Redden* v. *Baker,* 86 Ind. 191.

In *Miller* v. *Hart,* 135 Ind. 201, the claimants sought to subject the estate of an insane ward to the payment of a claim for services rendered in taking care of such ward, and in furnishing him with necessaries at the special instance and request of his guardian. It was held in that appeal that his estate in the hands of the guardian was liable. The court in that case, referring to some of the duties of the guardian under the law, said: "But the guardian's first duty was to take proper care of his ward, and furnish him a suitable home, food, clothing and other necessaries; and the value of such supplies is a proper charge against the ward's estate." This decision may certainly, under the facts, be considered as a ruling precedent in the case at bar. The facts in the case now under consideration disclose that the guardian directed, or at least requested, appellees to render the necessary services which they did in taking care of his ward with the understanding or arrangement with them that they were to look to his estate for compensation. To hold, under the circumstances, that they are not entitled to compensation because of the fact that they, as his daughters, previous to his affliction, lived with him as members of his family, would be a travesty upon both the law and justice.

Appellant's further contention is that the claims in question should have been collected either from the guardian or the ward's estate while the latter was under guardianship; hence it is urged that for this reason alone the estate in the hands of appellant as executor under the will is not liable. The death of the ward *eo instante* terminated the guardianship, and it then became the duty of the guardian fully to account for and turn over to the proper person the estate of his ward remaining in his hands. §2722 Burns 1901; *Stumph* v. *Pfeiffer,* 58 Ind. 472.

As the death of the ward, under the provisions of the statute, *ipso facto* terminates the guardianship, no sufficient reason therefore can be assigned why any unadjusted or unsettled claim, either legal or equitable, created against his estate while under guardianship, may not be settled and allowed out of his estate in the hands of his executor or administrator in the due course of the administration thereof. The ward in this case it appears died testate. At his death, therefore, all of his estate remaining in the hands of his guardian passed to his executor for settlement and distribution according to the provisions of the will, subject to all legitimate claims or liabilities existing against it at the date of his death. The mere fact that the claims of appellees were not settled and allowed by the probate court before the guardianship was terminated by the death of the ward certainly can not serve to deprive the claimants from enforcing them, if legitimate, against the estate of the deceased in the hands of his executor or administrator. That these claims, under the circumstances, may be so enforced is fully sustained by the authorities. *Carter* v. *Beckwith,* 128 N. Y. 312, 28 N. E. 582, and cases there cited; *Van Horn* v. *Hann,* 39 N. J. L. 207.

It is insisted that the written statement of appellees' claims proceeds on the theory that they arise out of an implied contract, while the evidence, as asserted, discloses an express contract with the guardian for the services rendered.

Therefore it is contended that appellees, if entitled to recover, must do so upon the theory outlined by their complaint. There is no merit in this contention, for the reason that the theory rule for which appellant contends has no application to the mere statement of a claim filed against a decedent's estate.

We have fully examined and considered all of the questions discussed by counsel for appellant, but find no error in the rulings or proceedings of the trial court.

Judgment affirmed.