## TABER ET AL., ADMINISTRATORS, *v.* ZEHNER.

[No. 6,919. Filed February 17, 1911.]

1. EXECUTORS AND ADMINISTRATORS.—*Claims Against.*—*Sufficiency.* —A claim which states a *prima facie* cause of action against a decedent's estate is sufficient.   p. 168.

2. TRUSTS.—*Direct.*—*Limitation of Actions.*—Statutes of limitation do not run against a direct trust.   p. 168.

3. TRUSTS.—*Parol Contracts.*—*Personal Property.*—Trusts in personal property can be created by parol agreement.   p. 169.

4. TRUSTS.—*Form of Agreement.*—No particular form of agreement is necessary to create a trust. p. 169.

5. TRUSTS. — *Collections. — Failure to Account. — Equity.* — Mere proof of the collection of money for another and a failure to account therefor, to the owner's knowledge, does not constitute a trust cognizable only in a court of equity. p. 169.

6. TRUSTS.—*Direct.—Claim.—Confidential Relations.—Executors.*— A claim showing that the claimant was ignorant of business matters, that she entrusted her cousin, a banker, with the collection of money due to her from an estate, that he collected it, and, by agreement, retained it and loaned it, and that he failed to account therefor, states facts sufficient to authorize proof of such claim. p. 169.

7. PLEADING.—*Claim Against Estate.—Theory.—Variance.*—A failure of a claimant against a decedent's estate to prove her case upon the precise theory outlined by the facts pleaded, is not fatal to her recovery. p. 173.

8. TRUSTS.—*Contracts.—Fraud.—Abuse of Confidence.—Equity.— Limitation.*—Where the evidence shows that decedent was a man of large business capacity, that the plaintiff was ignorant of business matters, that she was his own cousin, that he collected money for her, refused to account, loaned her money and otherwise imposed upon her, a court of equity will take cognizance of the matter, and by declaring a trust relation, compel an accounting from his estate of the amount actually due. p. 173.

9. TRUSTS.—*Imposition.—Limitations.*—Where a superior by his positive misconduct so imposes upon an inferior that the statute of limitations has run, equity may declare the existence of a trust relation and grant relief. p. 174.

10. APPEAL.—*Mandate.*—A judgment of affirmance will be entered as of date of submission, where appellee died after the submission of the cause. p. 175.

From Marshall Circuit Court; *Harry Bernetha,* Judge.

Action by Nancy J. Zehner against Melissa J. Taber and another, as administrators of the estate of Thomas O. Taber, deceased, and others. From a judgment for plaintiff against such administrators, they appeal. *Affirmed.*

*G. W. Paul* and *W. B. Paul,* for appellants.

*Leopold M. Lauer* and *E. C. Martindale,* for appellee Nancy J. Zehner.

MYERS, C. J.—On May 17, 1907, appellee filed in the Marshall Circuit Court her amended verified claim against the

estate of Thomas O. Taber, deceased, represented by appellants as administrators. Thereafter a trial was had, and judgment rendered in favor of appellee for $398.02.

From the claim, as filed, among other facts, it appears that on January 10, 1894, appellee was the widow of William A. Tichenor, deceased, whose estate was then pending for settlement in the State of Michigan; that she and one child, Cora Tichenor, were the sole heirs of her said husband, and were entitled to a certain legacy due her said husband from the estate of Levi Tillottson; that Thomas O. Taber, deceased, was a nephew of claimant, and a banker residing at Argos, Marshall county, Indiana, and in whom she had great confidence as to his honesty, business ability and integrity, and on account of which she intrusted to him the collection of said legacy; that said Thomas O. Taber on March 15, 1894, and May 3, 1894, collected said money due to claimant, amounting to $1,940.20, and which he received for the use and benefit of claimant; that, with the exception of $700, said Thomas O. Taber never paid any of said money to this claimant or to any person for her use and benefit, and has during all said time retained said money in his possession, and had it at the time of his death; "that on account of said confidential relations and relationship existing between said decedent and this claimant, and on account of the superior knowledge in business affairs which said Taber possessed, and his ability to loan, manage and control said money, this claimant permitted him to retain said money, with the agreement and understanding that said Taber would keep it loaned at interest, and would manage and control it for her, and that said Taber did retain and take control thereof, and did loan out at least a part of said money, as hereinbefore set out, and said Taber, in retaining and accepting said money, accepted said trust and agreed to account to claimant therefor; that claimant on divers times thereafter called upon said decedent for a

settlement of their said trust matter, at each of which times said Taber, through some plausible excuse, deferred such settlement and accounting until he was taken suddenly sick," from which sickness he died; that for the use and benefit of said claimant said Taber, on March 15, 1894, received $750, and on May 3, 1894, $1,190.20; that said administrators have refused to pay or settle said claim.

Appellants answered in four paragraphs; (1) a general denial; (2) six-year statute of limitations; (3) payment; (4) facts from which it appears that prior to the beginning of this action, and before the death of said Thomas O. Taber, all claims of claimant against him had been fully settled and compromised.

A separate demurrer to the second and fourth paragraphs of answer was overruled, to which ruling plaintiff reserved an exception.

Appellants have assigned as error that the complaint does not state facts sufficient to constitute a cause of action; that the court erred in not carrying plaintiff's demurrer to the second and fourth paragraphs of the defendant's answer back to the complaint and in not sustaining said demurrer to the complaint, and in overruling appellant's motion for a new trial.

The first and second assignments may be considered together. Counsel by these assignments present the question:

1. Do the facts stated in the claim filed present a demand barred by the statute of limitations? This being a claim against an estate, it is only necessary to state facts showing a prima facie claim. Masters v. Jones (1902), 158 Ind. 647; Stanley's Estate v. Pence (1903), 160 Ind. 636; Woods v. Matlock (1898), 19 Ind. App. 364; Leimgruber v. Leimgruber (1909), 172 Ind. 370. It appears that the claim originated in 1894, and counsel for ap-

2. pellee insist that the facts stated justify the conclusion that a direct and continuing trust was created,

not cognizable at law, but one which was wholly within the jurisdiction of equity. If this be true, it is clear that appellee's claim was not barred by the statute, "for when such a trust is shown to exist there can be no limitation of time." *Hitchcock* v. *Cosper* (1905), 164 Ind. 633.

In this case the subject-matter of the action in question was personal property, and it has often been held that a trust in personal property may be created by parol.

3. *Cowan* v. *Henika* (1897), 19 Ind. App. 40; *Woods* v. *Matlock, supra; Stanley's Estate* v. *Pence, supra.*

It is elementary that no particular form of words is necessary in order to create a trust, so that each case usually depends upon its own facts and circumstances from which the intention of the parties to create a trust is to be determined. In this case, if we were to stop with the facts showing the employment by appellee of Thomas O. Taber to collect the money claimed by her from Levi Tillottson's estate, that he collected the money and failed to turn over a portion of it, to the knowledge of appellee, we would not have a case cognizable only by a court of equity, and the statute would begin to run from the time Taber received the money. *Sheaf* v. *Dodge* (1903), 161 Ind. 270. The pleaded facts here show not only a blood relationship between the parties, but they also show their relations to be confidential, and on the part of Taber superior knowledge and ability to loan, manage and control said money, as an inducement for the parol agreement whereby Taber was to keep the money so belonging to the appellee, and manage and control it for her; that in pursuance of said agreement he did keep it, loaned and managed it with the understanding that he should account to appellee therefor; that he never did account for it or the accumulations thereon. These facts present an entirely different case from that considered in the case of *Hitchcock* v. *Cosper, supra.* Taber having agreed to

keep and hold the money for the use and benefit of appellee, shows such a relationship between the parties as to make it unconscionable to permit his representatives, because of lapse of time only, to defeat appellee's claim, otherwise justly due and owing to her. *Thornburg* v. *Buck* (1895), 13 Ind. App. 446. In view of our statute (§2828 Burns 1908, Acts 1883 p. 151, §5) requiring the holder of a claim against an estate to "file a succinct and definite statement" thereof, we are satisfied that the facts set forth by appellee are sufficient to authorize proof in its support.

The question for decision is whether appellee had a just and enforceable claim against the estate of Thomas O. Taber.

In substance, the evidence shows, without contradiction, that Thomas O. Taber, deceased, was a nephew of appellee, and in the year 1894 he received from the estate of Levi Tillottson, deceased, $3,880.40, one-half of which belonged to appellee. He made said collection in pursuance of a contract, dated December 1, 1893, between appellee and himself, whereby he was to "bear his own expenses in costs of said collection," and as compensation therefor he was to receive one-third of the sum collected. The other half of said sum so collected belonged to Cora Tichenor, for whom said Taber was appointed guardian. On October 16, 1894, Taber filed in the Marshall Circuit Court a current report in said guardianship, from which it appears that he charged himself with $1,940.20, and claimed credit for one-half of the attorney's fees, $148.71, and $250 for his services as guardian in making said collection.

From the foregoing facts it conclusively appears that said Taber collected for appellee $1,940.20, and if it be conceded that he was entitled to one-third of said sum so collected for her, or $646.73, and that appellee should reimburse said Taber for one-half of the attorney's fees—$148.71—there would still be due appellee in May, 1894, $1,144.76. Thomas O. Taber died December 26, 1906. Among the pri-

vate papers of Thomas O. Taber, and in his handwriting, was found a memorandum as follows:

"Argos, Indiana, May 4, 1894.
Account of collection for Nancy J. Tichenor, widow of Wm. A. Tichenor, and Cora A. Tichenor, minor heir of the late Wm. Anson Tichenor, deceased, from Levi Tillottson, ex. estate of Levi Tillottson, deceased.

Total amount collected ..............$3,880.40
Total expenses in suit, making col..... 497.42
                                     _____
                                      $3,382.98

Cora A. Tichenor ........$1,691.49
Nancy J. Tichenor ....... 895.45
T. O. Taber ............. 796.04
                        _____
                        $3,382.98"

Among the entries in the individual bank ledger of the State Exchange Bank, of Argos, Indiana, of which bank in 1894 Taber was its cashier, these entries appear:

"NANCY J. TICHENOR.
1894.
May 7, by cash....$895.45  May 19, to cash....$895.45."

On May 15, 1894, the State Exchange Bank issued to appellee a certificate of deposit calling for $890.45. On June 20, 1894, the same bank issued to appellee a certificate of deposit for $190.45 and on June 27, 1894, the same bank issued another certificate to appellee for $180; and on the part of the bank, the first certificate was signed by T. O. Taber, cashier, and the last two certificates by William Railsback, its president. Each of these certificates was endorsed on the back by Nancy J. Tichenor. These certificates are explained by the president of the bank as follows: The first certificate was returned to the bank, $700 of which was used in making a loan, and the balance is represented by the second certificate. The second certificate was returned, and the last certificate issued in its place for $180, and $10.45

paid to the appellee in cash. It also appears that a real estate mortgage, dated June 20, 1894, was given to secure a note dated June 16, 1894, due two years after date, for $700, signed by one Swihart, and payable to Nancy J. Tichenor; that this mortgage was satisfied June 20, 1896; that on June 17, 1896, a mortgage was executed by one Sarber to secure the payment of a note for $600, due two years after date, payable to appellee; that said Taber negotiated said loan, and said last note and mortgage were prepared under his direction; that said Sarber had no dealings with appellee prior to obtaining the money aforesaid; that the interest, as it became due, and the note when due were paid to appellee; that in the fall of 1896, according to the recollection of appellee's son-in-law, who was a witness at the trial, said Taber admitted having $600 or $700 belonging to appellee, and exhibited to him certain items in his bank-book to verify his statement; that this admission was made in explanation of a difference of opinion between appellee and Taber as to the amount of money in his hands belonging to the former; that in May, 1894, appellee, being dissatisfied with the amount of money received from Taber, consulted an attorney of the town of Argos regarding the matter, and as a result of this consultation the attorney wrote to Taber asking him to call at his office and adjust the matter, but instead of going to the attorney's office, Mr. Taber with another gentleman went to the home of appellee, who was then sick and who could not read nor write, except to write her own name, and there obtained her signature to a paper dated May 17, 1894, purporting to be a receipt for $1,000 in full of her share of the money collected from the Levi Tillottson estate, and in full settlement of said collection between said Taber and herself, but there is no evidence that any money was paid upon that occasion. The gentleman who accompanied Taber on that occasion was present at the trial and testified that he saw no money paid.

The undisputed facts in this case present for our consid-

eration a case different in many particulars from that presented by the facts as set forth in the claim filed.

7. But appellee's failure to establish the claim upon the precise theory outlined by the pleaded facts will not bar her right to recover. *Masters* v. *Jones, supra; Stanley's Estate* v. *Pence, supra; Woods* v. *Matlock, supra.*

It cannot be said that the claim states facts from which fraud can positively be inferred. But the facts, as developed at the trial, show that Taber was a man of large business experience, accustomed to dealing with men, evidently understood human nature, and a man in every way able to take care of himself in business matters. It is also perfectly plain that appellee was a person having but little, if any, business experience, unaccustomed to business methods, unable to read or write, and helpless, as compared with a person so well equipped as Taber to drive a good bargain. There is no evidence in the record tending to show that Taber ever rendered to appellee a statement of his doings with reference to the money received by him under his contract of December 1, 1893. There is no evidence that appellee was ever informed of, or ever knew the amount of money due her from Taber on such collection. At times there seems to have been some doubt in her mind as to whether she had received from Taber the amount of money to which she was entitled. This doubt appears to have readily yielded under the influence of Taber, for when she sought to have the matter adjusted through a representative, we find Taber calling upon her, rather than her attorney, who had invited him to his office for a conference regarding said collection. At that time he secured appellee's signature to an instrument purporting to show a full settlement of their matters by the payment of an amount much less than the true amount due. Looking to the contract of December 1, 1893, the private statement of the account between himself and appellee, dated May 4, 1894, and the transaction as exhibited by the books of the State Exchange Bank, together

with his manifested interest in her welfare, by looking after the loaning of her money, and whose judgment as to the security offered was apparently unquestioned, leads us to conclude that a full and fair accounting by Taber was never made to appellee. But by reason of his influence over her, and her reliance upon his honesty and fair treatment in the matter, he was enabled to conceal from her the facts as they really existed, thereby enabling him to retain and appropriate to his own use money justly belonging to her, and in violation of a positive fiduciary obligation. All presumptions are to be indulged in favor of the judgment, and it is our duty to consider only that part of the evidence most favorable to the action of the lower court. While there is no evidence from which we can say that by agreement a trust was created, yet the evidence is such as to warrant a court of equity in taking cognizance of the matter, and prevent a failure of justice, by declaring a trust relation between the parties, whether they so intended or not. *Jackson* v. *Landers* (1893), 134 Ind. 529; *Meredith* v. *Meredith* (1898), 150 Ind. 299; *Wright* v. *Moody* (1888), 116 Ind. 175. In the case of *Bonham* v. *Doyle* (1907), 39 Ind. App. 438, it is said: "Wherever a fiduciary relation is shown to exist, either by actual averment or by the statement of relations, during the continuance of which confidence is necessarily reposed by one or a corresponding influence possessed by the other, the person availing himself of his position to obtain an advantage becomes in equity a trustee. *Huffman* v. *Huffman* (1905), 35 Ind. App. 643."

We are not unmindful of the rule that the statute of limitations will run against trusts where there is concurrent law and equity jurisdiction, but in cases where, as here, one party, by acts or controlling influences, 9. overreaches another for such a length of time as the law will grant no relief, and relief must come if at all through a court of equity, then the case may be said to be one of exclusively equitable jurisdiction (19 Am. and Eng.

Ency. Law [2d ed.] 242), and within the exception to the general rule that ignorance of one's rights is unavailing to stop the running of the statute. The exception arises in "cases of concealment of the cause of action or fraud on the part of the defendant, and in special cases where ignorance of the plaintiff is due to no fault or negligence of his own, but to the peculiar circumstances of the case." 19 Am. and Eng. Ency. Law (2d ed.) 214.

Having concluded that Taber was a trustee, and appellee his *cestui que trust,* the case as here presented is not one within the statute of limitations.

Other questions presented and argued by counsel have been examined by us, but in view of the fact that a correct conclusion was reached in the court below, they are not of such importance as to be effective in overthrowing the judgment.

The attention of this court is called to the fact that since the submission of this cause the appellee has died.

10. The judgment is therefore affirmed as of the date of the submission of this cause in this court.