IN RE ESTATE OF ARTHUR WILLIAM MANN.

CARRIE F. MANN, Appellant, v. LEO J. WEGMAN, Treasurer of State, Appellee.

No. 42764.

FEBRUARY 12, 1935.

Prichard & Prichard, for appellant.

Ed. L. O'Connor, Attorney-general, Clair E. Hamilton, Assistant Attorney-general, and George E. Allen, County Attorney, for appellee.

MITCHELL, J.—Arthur William Mann, decedent, and Carrie Foote Mann, appellant, were married in 1892, living 33 years of their married life at Onawa, Iowa, and then moved to Miami, Florida, where they resided up until the date of Mr. Mann's death, which occurred on the 17th day of July, 1932.

The report for inheritance tax purposes was filed in the office of the clerk of the district court of Monona county, Iowa, on April 24, 1933. A commission to the inheritance tax appraisers was issued on May 20, 1933, and their return was filed on June 7, 1933. The total value placed on the real estate by the inheritance tax appraisers was $62,250.

On or about April 23, 1932, less than 3 months prior to his death, Arthur William Mann conveyed to his wife, Carrie Foote

Mann, who is now his widow and sole beneficiary, as well as executrix of his will, the following described real estate:

That part of the north one-half (N½) of section thirty-three, township eighty-four, range forty-four, west of the fifth principal meridian, lying east of federal highway No. 75.

The east thirty-two feet of lots eleven, twelve, thirteen, fourteen, fifteen, and sixteen, block sixty-five, city of Onawa, Monona county, Iowa.

The inheritance tax appraisers placed a value of $24,000 on the property first above described and a value of $7,000 on the property located in block sixty-five of the city of Onawa, making a total of $31,000. There appears to be no dispute in the record in regard to the appraised value of this real estate.

It should be noted that the inventory filed in Mr. Mann's estate was filed by his wife, the executrix, who is now claiming that the real estate upon which the state is claiming an inheritance tax was in fact her property. On August 21, 1933, she filed an amendment to the inventory and report, asking that the same be corrected, alleging in said amendment that through inadvertence and mistake in making the original report she listed as part of the assets of said estate and as belonging to said estate certain real property which was not the property of said deceased and which had been conveyed by him prior to his death for a valuable consideration, then describing the real estate which had been transferred to her. On the 27th day of September, 1933, the district court of Monona county, Iowa, ordered said inventory and preliminary tax report corrected. The Honorable Leo J. Wegman, state treasurer of Iowa, however, refused to release said lands from the payment of said inheritance tax. And on the 26th of December, 1933, Mrs. Mann filed an application in the probate proceedings to have said property released from the payment of state inheritance tax. The treasurer of the state of Iowa filed an answer to said application, in which he alleged, among other things, that the real estate described in the first paragraph of the application was conveyed by deed by the said Arthur William Mann to the said Carrie Foote ·Mann within 2 years prior to his death, and that said transfer was made in contemplation of the death of grantor; that said transfer was without consideration and was in the nature of a gift; and that for that reason the property is subject to inheritance tax under the laws of the state of Iowa. A hearing was held; evidence was offered;

and the lower court entered an order, denying said application for relief from the payment of state inheritance tax.

Mrs. Mann, being dissatified with the judgment of the lower court, has appealed to this court.

The inheritance tax laws of the state of Iowa impose a tax upon the net market value of any property passing by death, grant, sale, gift, or transfer made in contemplation of the death of the grantor or donor, and further provide that "any such transfer of property made by any person within two years prior to the death of the grantor or donor shall, unless shown to the contrary, be deemed to have been made in contemplation of death." Section 7307, par. 2, Code of 1931.

In the instant case Arthur William Mann died on July 7, 1932. On April 23, 1932, Mann conveyed to Carrie Foote Mann, who is now his widow and sole beneficiary and also executrix of his will, certain real estate located in Monona county, valued by the inheritance tax appraisers at $31,000. The transfer was made 3 months prior to the date of his death. Thus, under the provisions of section 7307, par. 2, of the Code of Iowa 1931, this transfer, it is presumed, was made "in contemplation of death." The burden of proof is therefore cast upon the appellant to overcome that presumption.

It appears that this court has never passed upon this section in its present form, nor has this court ever defined the phrase, "made in contemplation of the death of grantor or donor".

A somewhat similar statutory provision has been passed upon, however, by the Supreme Court of the United States. In a carefully considered opinion by that eminent court, Chief Justice Hughes, speaking for the court in the case of United States v. Wells, 283 U. S. 102, at page 115, 51 S. Ct. 446, 450, 75 L. Ed. 867, said:

"The phrase 'in contemplation of death,' previously found in state statutes, was first used by the Congress in the Revenue Act of 1916, imposing an estate tax. It was coupled with a clause creating a statutory presumption in case of gifts within two years before death. The provision was continued in the Revenue Act of 1918, which governs the present case, and in later legislation. While the interpretation of the phrase has not been uniform, there has been agreement upon certain fundamental considerations. It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving

rise to a definite motive. The provi-' ɪ is not confined to gifts causa mortis, which are made iⁿ ɪnticipation of impending death, are revocable, and are defeated if the donor survives the apprehended peril. Basket v. Hassell, 107 U. S. 602, 609, 610, [2 S. Ct. 415, 27 L. Ed. 500, 502, 503]. The statutory description embraces gifts inter vivos, despite the fact that they are fully executed, are irrevocable and indefeasible. The quality which brings the transfer within the statute is indicated by the context and manifest purpose. Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. Nichols v. Coolidge, 274 U. S. 531, 542, 47 S. Ct. 710, 71 L. Ed. 1184, 1192, 52 A. L. R. 1081; Milliken v. United States, ante, p. 15, 51 S. Ct. 324, 75 L. Ed. 809. As the transfer may otherwise have all the indicia of a valid gift inter vivos, the differentiating factor must be found in the transferor's motive. Death must be 'contemplated', that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. As a condition of body or mind that naturally gives rise to the feeling that death is near, that the donor is about to reach the moment of inevitable surrender of ownership, is most likely to prompt such a disposition to those who are deemed to be the proper objects of his bounty, the evidence of the existence or nonexistence of such a condition at the time of the gift is obviously of great importance in determining whether it is made in contemplation of death. The natural and reasonable inference which may be drawn from the fact that but a short period intervenes between the transfer and death is recognized by the statutory provision creating a presumption in the case of gifts within two years prior to death. But this presumption, by the statute before us, is expressly stated to be a rebuttable one, and the mere fact that death ensues even shortly after the gift does not determine absolutely that it is in contemplation of death. The question, necessarily, is as to the state of mind of the donor.

"As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable

that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand'.

"If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. Such transfers were made the subject of a distinct gift tax, since repealed. As illustrating transfers found to be related to purposes associated with life, rather than with the distribution of property in anticipation of death, the Government mentions transfers made 'for the purpose of relieving the donor of the cares of management or in order that his children may experience the responsibilities of business under his guidance and supervision.' The illustrations are useful but not exhaustive. The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death."

■ For a transfer to be in contemplation of death within the meaning of the Iowa inheritance tax laws, it is not necessary that the transfer be made in fear of immediate death from an existing malady. The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer.

Applying the rule as laid down in the case cited to the facts in this case, we find the transfers were made within 3 months of the death of Mr. Mann; that at the time of the transfers the decedent and the appellant both knew that Mr. Mann did not have long to live; that he transferred to her property of the value of $31,000; that, when Mrs. Mann made out the inventory and the inheritance tax report, she believed the property was taxable and listed it as taxable.

But the appellant claims that the transfer was in repayment to her of money which she had loaned to her husband when they were first married. At that time, according to Mrs. Mann's story, she was possessed of property and money of the value of approximately $8,000. According to her own testimony, she gave it to her husband. There is no showing that there was any agreement to repay. That was over forty years ago, and yet, through all the years that they lived together, no property was ever transferred to her by her husband, with the exception of the home in Florida, which Mr. Mann transferred to her some years before his death, and title to which was at the time of his death in the name of the appellant. The value of that home is not shown in the record. It may have exceeded the amount of $8,000 which she says was hers and which she gave to her husband. We have no way of ascertaining that from the record. The value of the property which was turned over to her by the deeds which her husband executed was in the amount of $31,000—far in excess of the amount which she claims to have turned over to her husband, to wit: the sum of $8,000. The appellant in this case has failed to overcome the burden placed upon her by the statutes of the state of Iowa.

The lower court had the witnesses before him. There is sufficient evidence to sustain the view of the lower court, and, as this court has announced a great many times, in cases of this kind the finding of the trial court on questions of fact will not be disturbed by this court where there is any evidence to substantiate them.

It follows, therefore, that the judgment and decree of the lower court must be, and it is hereby, affirmed.

ANDERSON, C. J., and KINTZINGER, POWERS, HAMILTON, and DONEGAN, JJ., concur.