IN RE GUARDIANSHIP OF T. M. RIDPATH.

ROBERT ROY FISHER, Guardian, Appellee; JOHN C. RIDPATH
et al., Appellants.

No. 45883.

MARCH 10, 1942.

Lake M. Crookham, for appellants.

Thomas J. Bray, for appellee.

WENNERSTRUM, J.—This appeal is occasioned by reason of objections filed to the sixth annual report, and for a review of all previous reports, of Robert Roy Fisher, guardian of the property of T. M. Ridpath. The district court, after hearing evidence on the objections presented, approved the last report

of the guardian and his prior acts. John C. Ridpath, son of T. M. Ridpath, and Porter Gerald Hull, the son of a deceased daughter of T. M. Ridpath, who were the objectors to the reports presented for approval, have appealed.

Robert Roy Fisher was appointed guardian of the property of T. M. Ridpath, incompetent, on the 22d day of December 1934. He is a son-in-law of the ward. The appointment of the guardian of this ward was made by reason of the personal application of T. M. Ridpath, under the provisions of section 12617 of the 1931 Code of Iowa. This particular section in the 1931 Code remains the same in the 1935 Code.

Prior to the appointment of the present guardian, T. M. Ridpath and his wife, and their daughter, Clara Bertha Ridpath, lived in California. During this period T. M. Ridpath lent a considerable amount of money on various parcels of real estate in or about San Diego. It developed that the loans were ill-advisedly made, inasmuch as foreclosures became necessary on the greater proportion of the mortgages held. After the guardian was appointed, he was directed by the court to go to California and make an investigation of the properties owned and covered by the mortgages. He there conferred with a realtor who placed a valuation on the several holdings of T. M. Ridpath in that state. The guardian did not consult with any other individual in or about San Diego as to these valuations. The guardian is a farmer and had not had any previous experience in dealing with property of this character. When he returned from California to Mahaska county he filed a supplemental inventory, describing the properties in which the ward was interested, and therein set forth the valuations as given by the realtor. These values aggregated the sum of approximately $37,000. It later developed, as the result of subsequent sales, that the valuations placed on these properties were extremely high and the real values were considerably less than those noted in the inventory. It also became necessary to pay a large amount of accumulated unpaid taxes on the various properties involved in the California holdings.

By June 1935, the guardian, the ward and his wife, and the children of the ward, apparently came to the conclusion that the properties in California were not worth the amount

the ward had in them and that it would necessitate further expense to have guardianship proceedings commenced in that state. Conferences were held between the guardian, the ward, and the children of the ward, as to what action should be taken, and it was finally agreed that the California properties should be conveyed to Clara Bertha Ridpath, the daughter. A contract was prepared between the ward and the daughter, which contract was submitted to the district court of Mahaska county and approved. This contract between Clara Bertha Ridpath and T. M. Ridpath and his wife, Sarah Ridpath, provided that the daughter should furnish care and nursing to her father and mother during their lifetimes, and that the father and mother would convey to the daughter all their property in San Diego county, California. It was also agreed that the daughter would execute a will bequeathing and devising the property to a trustee during the lifetime of her parents, with direction to the trustee to pay the income from the property to them, and upon their deaths it was bequeathed and devised as follows: To each of the three children of T. M. Ridpath a one-fourth share and to each of the two grandchildren of T. M. Ridpath a one-eighth share. The will in question was executed by Clara Bertha Ridpath and the deeds and bill of sale covering the properties in San Diego county, California, were executed by T. M. Ridpath. No objection was made to this procedure until some five years later. At this later time, John C. Ridpath, one of the objectors to the sixth annual report and the previous reports, made complaint to certain of the judges who hold court in Mahaska county as to the manner in which the guardianship was being administered. Later the court appointed two members of the Mahaska county bar to make full investigation of the guardianship and to report their findings and recommendations. This report was made, and suggestions relative to the handling of the guardianship estate were also incorporated. All the facts which heretofore have been set forth were disclosed by the testimony presented and by the exhibits introduced in the hearing before the court relative to the objections to the reports. The court, after consideration of the matters presented, approved the reports of the guardian, subject to certain charges and amounts which were not ap-

proved. Subsequently these amounts were accounted for by the guardian in later reports, and these reports were thereafter approved.

The manner in which the appellant has set forth his errors for reversal has been attacked by the appellee in a motion to dismiss claiming that the same have not been presented in the manner required by Rule 30 of this court. It is quite possible that this appeal could rightfully be disposed of by a ruling on the motion to dismiss based upon the failure of appellant to properly comply with the rules of this court relative to the assignment of errors. However, in this particular case, we are disposed to pass upon the complaints made by appellant upon their merit.

The appellant sets forth the following grounds as a basis for reversal: (1) That the court erred in approving the contract entered into by Clara Bertha Ridpath and T. M. Ridpath and his wife, by which the California property, both real and personal, was to be deeded and transferred to Clara Bertha Ridpath, in that the deeds were never approved by the court, and in fact were executed by the incompetent ward; (2) that the court erred in approving the contract entered into between the daughter and the ward in that the consideration was entirely inadequate and was not to the best interests of the incompetent ward's estate; (3) that the court erred in not ordering the guardian to account for all property involved in the transfer by T. M. Ridpath, the ward, to Clara Bertha Ridpath, inasmuch as the said guardian has not only served as guardian for T. M. Ridpath but has also acted as agent of Clara Bertha Ridpath in the handling of the California properties; (4) that the court erred in not removing the said guardian, under the entire record of this case; (5) that the court erred in allowing payment of certain sums to the attorney representing the guardian as attorney fees, claiming said allowance was excessive, and also, in paying only a nominal sum to the attorneys appointed by the court to investigate the entire guardianship proceedings.

I. As previously noted, appellant contends that the court erred in approving the contract entered into by Clara Bertha Ridpath and T. M. Ridpath, the ward, and his wife, relative

to the transfer of the California holdings. It is contended that the deeds to these properties were not submitted to the court for approval and were in fact executed by the incompetent ward. In this connection reference is here made to the case of Dean v. Estate of Atwood, 221 Iowa 1388, 1394, 212 N. W. 371, 373, wherein comment is made concerning a claim against the estate of Mary A. Atwood, who had previously been under guardianship upon her own application. It is disclosed by the facts in this case that Mary A. Atwood had entered into a written contract pertaining to the furnishing of board, room, and personal care during a period of time when she was under guardianship. In this last-cited case this court stated:

"The salient fact, however, is that the ward, although under an unchallenged and unimpeached guardianship, was mentally competent. It is true that a guardian serves in the discharge of his duties as the agency of the court, and the mere fact that the claim of appellee was not settled by the guardian or confirmed by the probate court before the guardianship was terminated by the death of the ward cannot serve to deprive the plaintiff from enforcing the same, if legitimate, against the estate of the deceased in the hands of her administrator. Masters, Executor, v. Jones et al., 158 Ind. 647, 64 N. E. 213.

"The trial court was correct in holding that a guardian cannot make a valid contract for his ward without the approval of the probate court, and that the direction or authorization of the court must precede the act of the guardian (Slusher v. Hammond, 94 Iowa 512, 63 N. W. 185) or be subsequently ratified by the court.

"It was a recognition that the probate court had jurisdiction of the estate of the ward. The pleaded memorandum of agreement was, at least, probative. It was admissible on the question of the good faith of the plaintiff in rendering the services which must be viewed as necessaries, and also as evidence that her acting guardian thought the same to be necessary, as well as tending to prove that a contract was made for said services between the ward and the claimant herein."

In the present case the record discloses that the matter of the approval of the contract between the daughter and the

ward was submitted to the court for consideration and that on the 19th of June 1935, the court entered an order which stated, in part, as follows:

" * * * and the court, after examining said application and hearing and considering the evidence introduced in support thereof, and being duly advised in the matter, finds that the property owned by said ward in the County of San Diego and State of California is not producing a sufficient amount to pay the taxes, insurance, maintenance and cost of supervision; that the said ward desires to convey all of said property to his daughter Clara Bertha Ridpath, who is a single woman, and the said Clara Bertha Ridpath has agreed to continue to live with and care for said ward and his wife; that said guardian was appointed upon the petition of said ward; that the said ward is mentally capable of executing a valid deed and a valid contract, and that it is for the best interests of the estate of said ward that he convey the property owned by him in San Diego County, California, to his daughter, Clara Bertha Ridpath, in consideration of her entering into a contract with said ward to live with and care for him and his wife during their respective lifetimes.

"It is therefore ordered and adjudged by the court that Robert Roy Fisher, guardian of the property of T. M. Ridpath, incompetent, be and he is hereby authorized and directed to turn over to Clara Bertha Ridpath all of the property owned by said ward in the County of San Diego and State of California, upon the execution of deeds and other title papers by said ward conveying said property to the said Clara Bertha Ridpath and the execution of a contract by her to live with and care for said ward and his wife. * * * ."

There is no showing in the record but that all the facts pertaining to this contract were properly submitted to the court and it was fully advised as to what was contemplated. The initial order which was signed discloses all matters of which complaint is now made; it further shows that they were given consideration by the court upon this initial presentation, and, inasmuch as no showing is made that questions this transaction, the court was justified in further approving the contract now

under consideration. We hold that in this particular case the ward's interests have been properly safeguarded and that the ward was competent to enter into the contract. Inasmuch as the court had knowledge of all the facts, no complaint can be made at this time. A case which bears somewhat upon our position in this matter is that of In re Guardianship of Meinders, 222 Iowa 236, 239, 268 N. W. 537, 539, where we stated, in relation to a guardianship instituted upon the application of the ward himself, as follows:

"And so in the case at bar the guardian was in reality a trustee or agent of the ward, to act with him in respect to his property and his property rights."

It is apparent upon consideration of our prior holdings that this court has deemed guardians appointed to act under the provisions of section 12617 in the nature of conservators and trustees of the particular ward's estate, and that the ward, subject to the approval of the court, may enter into enforceable and valid contracts. The ward's affairs, by virtue of the appointment of a guardian on his own application, are rightfully subject to the supervision of the court, but such a ward is not limited in the same manner in the control of his affairs as in general guardianships.

II. It is also contended that the court erred in not ordering the guardian to account for all property involved in the transfer made by T. M. Ridpath to Clara Bertha Ridpath inasmuch as the guardian was also serving as agent of Clara Bertha Ridpath in the handling of the California properties. It is contended that there is a conflict of interests between the guardianship and the interests of Clara Bertha Ridpath. There is no showing that there has been any loss to the guardianship by reason of the fact that the guardian was also assisting Clara Bertha Ridpath in her individual capacity in the handling of the remaining California properties. We cannot see where this can be the basis of any complaint in this probate matter.

III. It is contended that the court, on its own motion, should have removed the guardian, under the entire record in the case. There was no application for removal of the guardian.

Action of this character should not be taken unless the court is satisfied that the interests of the ward have not been properly protected. There has been no showing that the ward's interests have not been properly safeguarded.

IV. Complaint is also made as to the allowance of attorney fees. When supported by proper evidence, the allowance of fees is a matter within the discretion of the district court. There has been no evidence of any character presented which would indicate that the fees allowed were not proper.

In connection with appeals in probate matters, in In re Estate of Conkling, 221 Iowa 1332, 1335, 268 N. W. 67, 68, we said:

"This is an appeal in a probate matter, and this court has held time and again that the findings of fact made by the lower court, if based upon sufficient competent evidence, are binding upon this court, as is the verdict of a jury, and will not be disturbed on appeal. In re Fish's Will, 220 Iowa 1247, 264 N. W. 123; In re Mann's Estate, 219 Iowa 597, 258 N. W. 904."

Upon the record as presented, we are of the opinion that there was sufficient evidence to justify the action of the district court in approving the reports and matters under consideration and that it should not be disturbed on this appeal.

The order of the district court approving the reports is therefore affirmed.

The motions to dismiss, as submitted upon the presentation of this appeal, are overruled.—Affirmed.

BLISS, C. J., and MILLER, HALE, SAGER, GARFIELD, STIGER, and MITCHELL, JJ., concur.