# DEPUE *v.* DISTRICT OF COLUMBIA.

# DISTRICT OF COLUMBIA *v.* DEPUE.

INSANE PERSONS; INDIGENCY; STATUTES; GOVERNMENT HOSPITAL FOR THE
INSANE; STATUTE OF LIMITATIONS.

1. To be indigent does not mean that a person must be a pauper, and,
   within the meaning of the statute relating to the commitment of the
   insane to the Government Hospital for the Insane, an insane person
   with insufficient estate to pay for his maintenance in the hospital,
   after providing for those who could claim his support, is indigent.

2. Whether an insane person is indigent within the meaning of the statute
   relating to the commitment of such persons to the Government
   Hospital for the Insane is a question of lact. If such a person has
   $300 in bank and certain life insurance policies having a surrender
   value, and has no one dependent upon him, he is not indigent.

3. So much of chap. 4, U. S. Rev. Stat. (secs. 4838–4858) as relates to the
   commitment of the indigent insane of the District of Columbia to the
   Government Hospital for the Insane, has been superseded by the act
   of Congress of February 23, 1905 (33 Stat. at L. 740, chap. 738),
   and secs. 115a, 115b, 115c, 115d, and 115e, D. C. Code (32 Stat. at
   L. 524, chap. 1329). (Citing *Mackey* v. *Peters,* 22 App. D. C. 341,
   and *Baker* v. *District of Columbia,* 39 App. D. C. 42.)

4. An action lies by the District of Columbia against the committee of an
   insane person with homicidal tendencies, who has been committed as
   such to the Government Hospital for the Insane, to recover from his
   estate in the hands of his committee the amount expended by the
   District for costs and maintenance in his behalf, both prior and
   subsequent to the date of the appointment of the committee.

5. The statute of limitations does not apply to an action by the District of
   Columbia against the committee of an insane person who has been
   committed to the Government Hospital for the Insane, to recover for
   costs advanced and expenses incurred in the maintenance of the
   insane person, as the statute giving such right of action is incon-
   sistent therewith. (Following *Baker* v. *District of Columbia,* 39
   App. D. C. 42.)

6. Under sec. 115b, D. C. Code (32 Stat. at L. 524, chap. 1329), the supreme
   court of the District of Columbia, in a suit by the District against

the committee of an insane person to recover from his estate money expended by the District of Columbia in the maintenance of the insane person in the Government Hospital for the Insane, has the discretionary power to order a certain portion of the estate to be invested and the interest thereon used to pay premiums on outstanding life insurance policies on the life of such insane person.

Nos. 2880 and 2881.  Submitted February 10, 1916.  Decided April 4, 1916.

HEARING on cross appeals from a decree of the Supreme Court of the District of Columbia confirming a report of the Auditor in a proceeding to subject the estate of an insane person to the payment of cost advanced and expenses incurred in his maintenance in the Government Hospital for the Insane.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

James K. Depue on October 27, 1905, was adjudged by the supreme court of the District of Columbia to be of unsound mind, and was committed to the Government Hospital for the Insane, where he has ever since remained as a charge upon the District of Columbia.  On November 6, 1905, defendant Leidy S. Depue was appointed committee and trustee of the estate of said lunatic, and duly qualified as such.

The petition in this case was filed by the Commissioners of the District of Columbia on November 27, 1911, to recover from the committee, out of the estate of Depue, the amount expended by it for costs and maintenance in his behalf.  The committee answered, admitting liability for the costs and expenses sustained by the District prior to his appointment and qualification, but denying any liability thereafter.

The cause was referred to the auditor for report.  According to his report filed October 12, 1914, he found a net estate in the hands of the committee of $2,025.10, and a total amount due the District, as of September 22, 1914, of $2,024.03, whereupon the auditor made the following finding and recommendation: "The committee asks that he be permitted to retain sufficient of

the funds of the ward to provide for the keeping up of his remaining insurance policies amounting to $1,300. From the letter of the superintendent of the hospital the incompetent's age is forty-five and his expectancy of life normal. The sum of $750 invested at 5 per cent will earn enough to pay his insurance assessments of $33.66 per year and at his death add $1,300 additional to his estate, out of which to provide for his funeral expenses and maintenance at the hospital. It would seem, therefore, to be good business for the District to continue the policies and thus provide for future maintenance of the ward for a period of about five years, the present estate being just sufficient to pay for the maintenance to date. I recommend, therefore, that the committee be authorized and directed to retain $751.07 of the balance in his hands, invest $750 at 5 per cent, pay to the District $1,274.03 on account of its claim of September 22, 1914, amounting to $2,024.03, and keep the said insurance policies in force without impairing the principal unless by direction of the court."

The court entered a decree confirming the report of the auditor, with judgment for the District in the amount of $2,024.03, and a further order directing that the committee retain out of said amount the sum of $750 to be invested for the keeping in force of the insurance policies as recommended in the report of the auditor. From this decree the committee has appealed generally, and from so much of the order as sets aside $750 to be invested and the interest used in the payment of premiums on the insurance policies, the District has appealed.

*Mr. W. C. Sullivan* for Depue.

*Mr. Conrad H. Syme,* Corporation Counsel, *Robert L. Williams,* Assistant, and *Mr. Carl A. Mapes* for the District of Columbia.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is urged by counsel for the committee that the estate of

the patient cannot be subjected to the payment of maintenance in the Government Hospital for the Insane subsequent to the appointment of the committee, except under the terms of section 4849, Rev. Stat. U. S. Comp. Stat. 1913, § 9314, and that there was a total failure on the part of the District to comply with its provisions. This section provides as follows: "Whenever it appears in the case of any insane person whose insanity commenced while he was a resident of the District of Columbia that he is able to defray a portion, but not the whole, of the expenses of his support and treatment in the Government Hospital for the insane, the board of visitors of the hospital is authorized to inquire into the facts of the case; and if it appears to the board, upon such inquiry, that such insane person has property and no family, or has more property than is required for the support of his family, then, as a condition upon which such insane person, admitted or to be admitted upon the order of the Secretary of the Interior, shall receive or continue to receive the benefits of the hospital, there shall be paid to the superintendent from the income, property, or estate of such insane person such portion of his expenses in the hospital as a majority of the board shall determine to be just and reasonable, under all the circumstances."

It will be observed that this statute relates only to insane persons who are capable of defraying "a portion, but not the whole," of their expenses. It then provides that an inquiry shall be made by the board of visitors to ascertain the amount of property possessed by the insane person; or, if he has a family, how much will be required to support the family, and what, if any, portion can be set aside for his maintenance, which the act provides, as a condition precedent to becoming a patient in the hospital or remaining therein, shall be paid, not to the District of Columbia, but to the superintendent of the hospital. Such an inquiry by some tribunal was a most beneficent provision for protecting those dependent upon the estate of the insane person, and, at the same time, preventing any surplus above the amount found necessary for that purpose from being diverted from the support of the patient. This jurisdiction, however, as we shall have oc-

casion to observe, has been transferred by a later act from the board of visitors to the supreme court of the District of Columbia.

Section 4849 was part of the original act providing for the admission to the hospital of indigent insane from the District of Columbia. It provided, among other things, that admission should be on the order of the Secretary of the Interior. The order of admission could only be made by the Secretary upon the application of a member of the board of visitors, accompanied by a certificate from a judge of the supreme court or of a justice of the peace of the District of Columbia in compliance with section 4846, Rev. Stat. Comp. Stat. 1913, § 9310, which required a certificate of the judge or justice, accompanied by the affidavits of two reputable resident physicians as to the insanity of the person, and the affidavits of two householders of the District to the effect that from a personal examination into the affairs of the insane person he or she had not sufficient estate from which to pay the expense of maintenance in the Hospital for the Insane. Section 4847, Rev. Stat., then made it the duty of a member of the board of visitors to examine into the sufficiency of the affidavits and, if satisfied that the insane person was indigent, to make application to the Secretary of the Interior for an order of commitment to the hospital, but, if not satisfied as to such indigency, to withhold said application.

Thus it appears that the whole matter was vested in the board of visitors. The member could present or withhold the application for order to the Secretary after inquiry had been made by the court. This legislation related wholly, as we have suggested, to the admission of indigent patients. Section 4849 had no reference to the total charge that should be made for maintaining a patient. It provided no means for fixing the amount which might thereafter be recovered should the indigent patient become possessed of means. It only provided for fixing "a portion, but not the whole," which should be paid when the service was rendered,—not be recovered at some future time. Provision for this payment was made a condition precedent to the admission of the patient to the hospital, or to his continuance therein. The por-

tion required to be paid had no reference to the total cost of maintenance, which may vary from time to time. Another section (4853 Rev. Stat. Comp. Stat. 1913, § 9324) provided for the admission to the hospital of those able to pay for their maintenance.

In this case Depue was found by the verdict of the jury "to be of unsound mind, suffering from paranoia, accompanied with homicidal tendencies." The court entered an order confirming the verdict. It seems, therefore, that he was not found to be an indigent insane person. To be indigent does not mean that a person must be a pauper. An insane person with insufficient estate to pay for his maintenance in the Hospital for the Insane, after providing for those who could claim his support, is indigent within the terms of the Revised Statutes. If he could pay only "a portion, but not the whole," of the expense of maintenance, he was an indigent insane person within the provisions of section 4849, supra. It follows, therefore, that whether or not an insane person is indigent, is a question of fact. The auditor found that at the time of commitment Depue had $300 in bank and certain life insurance policies, from the subsequent surrender of which the present estate was created. He had no one dependent upon him. The insurance policies had a cash surrender value, which constituted a present estate. It would seem, therefore, that he was not indigent within the terms of the law when committed.

The finding of insanity with homicidal tendencies is important, since, whether indigent or not, it is specially provided for under a later act of Congress, which, together with other legislation about to be considered, we think supersedes the above provisions of the Revised Statutes, including section 4849, relating to the commitment of the indigent insane.

The act of Congress of February 23, 1905 (33 Stat. at L. 740, chap. 738, Comp. Stat. 1913, § 9317), entitled "An Act to Change the Lunacy Proceedings in the District of Columbia where the Commissioners of Said District Are the Petitioners, and for Other Purposes," provides, among other things, as follows: "That hereafter the proceedings instituted upon petition

of the Commissioners of the District of Columbia to determine the mental condition of alleged indigent insane persons and persons alleged to be insane, with homicidal or otherwise dangerous tendencies, shall be according to the provisions of the Code of Law for the District of Columbia relating to lunacy proceedings: *Provided,* That the jury to be used in case the said Commissioners are the petitioners shall be impaneled by the United States marshal for said District, upon order of the court, from the jurors in attendance upon the criminal courts of said District, who shall perform such services in addition to and as part of their duties in said criminal courts: *Provided further,* That during such time as jurors are not in attendance upon said criminal courts the court may direct the said marshal to impanel the jurors in attendance upon the police court of said District, who shall perform such duties in addition to and as part of their duties in said police court; or the said court may direct a special jury to be summoned for such inquisitions. In case any such person adjudged to be of unsound mind has property, real or personal, the equity court of said District shall have full power in the same cause to appoint a committee or trustee of the person and estate of such person, according to the provisions of said Code, and such committee or trustee shall reimburse, out of the funds of the lunatic, the District of Columbia for all court costs expended or incurred by it, and for all moneys by it expended or costs incurred in caring for and treating such insane person up to the time of such appointment."

It will be observed that the proceedings under this act are instituted by the District of Columbia, instead of by a member of the board of visitors; that an entirely different procedure is prescribed for determining the insanity of a person; that the order of commitment is from the court, instead of the Secretary of the Interior; that the appointment of a committee or trustee is made by the supreme court of the District, and that, by reference to the District Code, instead of two resident householders inquiring into the affairs of the insane person and the board of visitors determining what portion of his estate shall be set aside to pay "a portion, but not the whole," of his maintenance,

the supreme court of the District of Columbia is given "full power and authority to superintend and direct the affairs of persons *non compos mentis,* and to appoint a committee or trustees for such persons after hearing the nearest relatives of such person or some of them if residing within the jurisdiction of the court, and to make such orders and decrees for the care of their persons and the management and preservation of their estates, including the collection, sale, exchange, and reinvestment of their personal estate, as to the court may seem proper." D. C. Code, sec. 115b [32 Stat. at L. 524, chap. 1329].

Interpreting the act of 1905, above quoted, this court in *Baker* v. *District of Columbia,* 39 App. D. C. 42, speaking through Mr. Justice Robb, said: "We think Congress thereby intended to declare a change in the relation of the indigent insane, whereby maintenance thereafter received by them should be received upon the condition that they pay therefor when able; in other words, the passage of that act marked a further change in the policy of the law towards the indigent insane. Maintenance thereafter furnished was to be furnished not as an unconditional charity, but upon the expectation of future reimbursement, if the circumstances of the beneficiary should permit. The provision that the committee or trustee of such insane person shall reimburse the District for care and expenses up to the time of the appointment of such committee or trustee was, we think, intended to relate back to the passage of the act, and no further. Upon that date, as above pointed out, the status of the insane person changed, and, by implication of law, he thereafter became liable for the support furnished him."

From the language here used, the act is interpreted as meaning that maintenance furnished indigent insane persons after its passage is received by them "upon the condition that they pay therefor when able." A new policy is also declared by the act, "whereby maintenance thereafter furnished was to be furnished, not as an unconditional charity, but upon the expectation of future reimbursement," should the insane person become possessed of sufficient estate. The concluding words of the section of the act quoted, which appear to limit recovery "up to the time" of

the appointment of the committee or trustee, as suggested in the Baker Case, relates to the right of recovery prior to the appointment and back to the date of commitment, provided the commitment does not antedate the act. After the appointment of the committee or trustee, the statutes, construed together, confer such general power in the court over the persons and estate of the insane, to subject their property to their support (D. C. Code, sec. 115d), and to supervise the conduct of the committee or trustee upon whom the duty of providing for the support of the ward primarily rests, that its jurisdiction to decree the District reimbursement out of the estate of an insane person cannot be successfully challenged. This court, referring to the power of chancery over the estates of persons *non compos mentis,* as expressed in section 115b of the District Code, said: "As has been repeatedly said in such cases, the court acts as *parens patriæ,* armed with the power of the State, and committees and trustees are only its instrumentalities to carry its orders into effect." *Mackey* v. *Peters,* 22 App. D. C. 341, 346.

It may be suggested that the mere fact that Depue was committed to the hospital as an insane person with homicidal tendencies, instead of as an indigent person, is not material, since both classes are embraced within the act of 1905, and there is no distinction made between them as to the right of recovery for maintenance by the District. In both instances, the duty of instituting proceedings for commitment and of paying for their maintenance in the hospital is imposed upon the District,—in the case of the indigent insane, because of their inability to pay for their maintenance; and in the case of the insane with homicidal tendencies, for the protection of society, irrespective of their ability to pay for their maintenance. The right of action for reimbursement exists in both cases where there is a sufficient estate to admit of legal recovery.

Coming to the plea of the statute of limitations, we are here dealing with a statute granting a special right of action for continuing services, concerning which we said in the Baker Case that "the necessary effect of the act of 1905 is to prevent the running of the statute of limitations, as its provisions are incon-

sistent therewith.  *Campbell* v. *Holt,* 115 U. S. 620, 629, 29
L. ed. 483, 487, 6 Sup. Ct. Rep. 209."

As to the appeal of the District of Columbia, the auditor sug-
gested that it would be good business policy for the District if
the court should order the committee to invest $750 of the estate,
and use the interest thereon to pay the premiums on certain out-
standing life insurance policies amounting to $1,300.  The court
accepted the suggestion of the auditor, and ordered the invest-
ment made.  It is not clear just why the District should object
to this arrangement.  Not only is it assured ultimately of the
$750 invested, but of reimbursement for future maintenance to
the extent of the policies, or so much thereof as may be neces-
sary to satisfy its claim.  It was within the discretion and power
of the court to require the committee to make this investment
for the benefit of the ward and his creditors.  The power of the
court to make orders and decrees for the management of the
estates of persons *non compos mentis* is expressly conferred
by section 115b of the District Code.

The decree and order are affirmed, with costs divided equally
between the respective appellants.                   *Affirmed.*