# CHARLESTON.

### M. A. MARTIN v. RICHARD K. BEUTER.

Submitted February 6, 1917.    Decided February 13, 1917.

1. INSANE PERSONS—*Insane Wife—Liability for Maintenance.*
    A person taking upon himself, in the manner prescribed by sec. 10, ch. 58 of the Code of 1913, the custody and care of a wife adjudged to be insane and committed to a public hospital for the insane, upon the complaint of her husband, under circumstances indicative of motive and purpose on his part, to be relieved of her company and presence, may recover from him the reasonable cost of her board and medicines furnished her and the reasonable value of necessary care, nursing and attention bestowed upon her. (p. 605).

2. SAME—*Insane Wife—Maintenance—Liability.*
    In such case, proof of the husband's unfaithfulness to his wife, devotion to another woman, prosecution of the proceeding for her committal, lack of effort to take care of her at home and indifference to her while in private custody, after adjudication of her insanity, justify the court in its direction of a verdict for the plaintiff, in an action to recover from the husband such expenses and the value of such services.  (p. 607).

Error to Circuit Court, Ohio County.

Action by M. A. Martin against Richard K. Beuter. Judgment for plaintiff, and defendant brings error. *Affirmed.*

*A. L. Sawtell,* for plaintiff in error.

*W. P. Robinson,* for defendant in error.

POFFENBARGER, JUDGE:

A judgment rendered by the circuit court of Ohio County, on an appeal from a judgment of a justice, in favor of a father-in-law against his son-in-law, for the support and nursing of the latter's insane wife, while in the custody and care of the former, under a bond given by him in a proceeding to have her committed to a hospital for the insane, the condition whereof was that he should restrain and take proper care of her until the cause of her confinement should cease, is the subject matter of this writ of error.

On the complaint of the husband, the wife was apprehended, taken before a justice and adjudged to be insane, on February 23, 1915. Two days later, her father and a sister appeared and took her into their care, on filing with the justice the bond required by the statute. From that date until August 31, 1915, when she was adjudged to have been restored to sanity, she remained at the home of her father and received from him and her mother such care, attention and nursing as she required and also her board. Such medicines as she needed were furnished by her father, at an expense of $14.50. This item and a charge of $10.00 a week for board and nursing, amounting to $262.85, making a total of $277.35, constituted the claim for which the action was brought. The justice rendered a judgment for the whole amount thereof and, on the trial in the circuit court, there was a verdict by direction of the court, for the like amount, upon which judgment was rendered.

As to the husband's liability for support of his insane wife, the authorities are in considerable conflict. Differences in the circumstances under which claims for such support have been asserted and in the provisions of the statutes pertaining to the subject, may afford ground for reconciliation of most of the decisions and for the view that the contradictions found therein are apparent rather than real. In some instances, actions were brought against husbands by hospitals for the insane, established and maintained by law and at public expense. Under such circumstances, there is no common law liability or right of recovery, and liability, therefore, depends upon the terms of the statute. *Richardson* v. *Trustees,* (Wis.)

69 L. R. A. 829 ;*Delaware County* v. *McDonald,* 46 Ia. 170; *Noble County* v. *Schmoke,* 51 Ind. 416; *Baldwin* v. *Douglas County,* 37 Neb. 283; *Watt* v. *Smith,* 89 Cal. 602; *Bangor* v. *Inhabitants of Wiscasset,* 71 Me. 535. As no public institution seeks recovery in this case, much of the law referred to and applied in those just cited, has no application. In some jurisdictions, it is held that, if the husband abandons his wife and so causes her to become a public charge, county and township authorities may charge him with her maintenance and support, on common law principles. *Howard* v. *Whetstone Township,* 10 Ohio 365; *Springfield Township* v. *Demott,* 13 Ohio 105; *Goodale* v. *Lawrence,* 88 N. Y. 513. An inquiry very similar to the one presented here was disposed of in *Senft* v. *Carpenter,* 13 R. I. 545.

In that case the husband had placed the wife in a hospital for the insane from which she escaped. Then he caused her to be apprehended and taken before a court for proceedings under the lunacy statute. The court released her upon a statutory recognizance given by friends and relatives who took upon themselves her care and maintenance. The husband, at the time, objected to her release under the recognizance, and notified the plaintiff that he would not pay for her board at his residence, but would pay for it at the hospital, and afterwards provided a place for her outside of his house and gave notice of the fact. She was an invalid and required much care and attention, and she persistently refused to have any communication with her husband, claiming she was not insane and that her confinement was wrongful. On the theory of right in the wife to regain her liberty, by means of the recognizance so given, and then pledge the husband's credit for her support and maintenance, in the exercise of her common law right, in the event of his wrongful abandonment of her, the court permitted the plaintiff to recover.

Our statute providing for release and private custody is like that of Rhode Island, in all substantial particulars; but neither statute expressly gives the custodian right of action against the husband. In neither state, does the statute contemplate commitment, if a friend or relative will take the insane person into his care and custody and execute a bond

with sufficient security, conditioned for performance of his duty as custodian. Code, 1913, ch. 58, sec. 10; Barnes' Code, ch. 58, sec. 5. No doubt the real purpose of this provision is to enable friends and relatives of persons adjudged to be insane, having the means to provide for their private custody and desiring to take care of them, to prevent them from being committed to public asylums for the insane. Under the law as it was, at the date of the commitment in question, it was the duty of any justice suspecting any person in his county to be a lunatic, to issue his warrant requiring such person to be brought before him for inquiry and determination as to his sanity. It was interpreted as authorizing any citizen to file a complaint charging lunacy. But for the provision for private custody, it would be within the power of any citizen to cause any insane person to be confined in a public asylum of the state, even though he had ample property and means for private care and maintenance, and beyond the power of a husband to keep his insane wife at home, however great his ability to provide for her and earnest his desire to keep her. This provision may not be a mere means of regaining liberty, afforded an insane person, for such persons have no constitutional or statutory right of liberty in the ordinary sense of the term. Nor does this provision confer it upon them. It merely gives a right of private custody instead of custody by public officials and institutions.

In this case, however, the filing of the complaint by the husband, the adjudication of insanity and the commitment are not all of the circumstances to be considered. The husband evidently had an ulterior motive for commitment of his wife to an asylum. He filed the complaint and had her adjudged to be insane, without notice to her parents, and, after they took her into their custody, he contributed absolutely nothing for her support and gave her no care or attention. Moreover, he had been unfaithful to her. He had given a good deal of his time and attention to another woman, had taken the piano from the house, ostensibly to have it repaired, and had never returned it. These circumstances throw light on his motive for the legal proceedings and his failure to endeavor to make any provision for her private custody and

care or to contribute thereto. Taken and considered altogether, the facts and circumstances tend very strongly to prove such neglect and abandonment of the wife as will sustain, under the common law, her pledge of his credit for the necessaries of life, support, maintenance, nursing and medical attention. They are all fully established by evidence none of which is contradicted, the defendant having offered no testimony whatever. In *Richardson* v. *Trustees,* 69 L. R. A. 829, the court interprets the decisions in *Senft* v. *Carpenter,* 18 R. I. 545, as being based on abandonment, notwithstanding the opinion in that case apparently puts the decision on a different ground. In *Goodale* v. *Lawrence,* 88 N. Y. 513, the court said ''A husband who has voluntarily permitted an insane wife to absent herself from his house and become a public charge, when sued for her support by the poor authorities, is estopped from denying that she is a pauper.'' Similarly, it may be said that a husband causing his insane wife to be committed to an asylum, under circumstances indicating desire to get rid of her, may be deemed to have abandoned her, in such sense as legally justifies any person in furnishing her the necessaries of life, on his credit. Neglect of duty or misconduct tantamount in law to abandonment or desertion seems to be the ground on which recoveries in cases of this class have been allowed, and, in few, if any, instances, have they been denied, in the absence of actual substitution of support by the public for that ordinarily imposed upon the husband by law. Such substitution was thwarted by legal intervention of the wife's father, and the facts and circumstances establish conditions under which recovery is generally permitted. The element of legal procedure involved constitutes no insuperable obstacle. Courts often look beyond that for intent and purpose determinative of questions of right. *State* v. *Emblem,* 56 W. Va., 678.

These principles and conclusions sustain the action of the court in directing a verdict for the plaintiff, wherefore the judgment will be affirmed.

*Affirmed.*