**FITZHUGH v. DISTRICT OF COLUMBIA.**

**No. 7328.**

United States Court of Appeals for the
District of Columbia.

Argued Dec. 5, 1939.

Decided Jan. 8, 1940.

W. Cameron Burton and Alexander H
Bell, both of Washington, D. C., for appel-
lant.

Elwood H. Seal, Corp. Counsel, D. C.,
Vernon E. West, Principal Asst. Corp.
Counsel, D. C., and Stanley DeNeale, Asst.
Corp. Counsel, D. C., all of Washington, D.
C., for appellee.

Before GRONER, C. J., and MILLER
and VINSON, JJ.

GRONER, C. J.

Appellant is the administratrix of the es-
tate of Margaret B. Pitner, a former resi-
dent of Washington City. On November
16, 1928, Mrs. Pitner was adjudged of un-
sound mind with dangerous tendencies and
by order of the District of Columbia Com-
missioners was committed to St. Elizabeths
Hospital, where she remained until July 15,
1936. She died February 11, 1937. Her
husband had died February 3, 1936, and
four months thereafter Arthur B. Lambert
had been appointed committee of her per-
son and estate. He filed his first and final
account and was discharged prior to the
commencement of this action. In May,
1937, the District of Columbia, appellee, filed
its claim in the probate branch of the Dis-

trict Court against Mrs. Pitner's estate for money expended for her board and care during her confinement in the hospital. The claim was rejected, and this action was begun January 8, 1938. A demurrer to the declaration was overruled. Appellant then filed a plea, to which the District demurred. The lower court sustained this demurrer, with leave to appellant to answer, but no answer being filed and the administratrix electing to stand upon her plea, judgment was entered in favor of the District for the amount claimed, with interest. The appeal is from this judgment.

Appellant argues three points on the merits: (1) The estate of the lunatic, after death, was not charged with the duty, through the personal representative, of reimbursing appellee; (2) the husband of the decedent was responsible for her necessaries, if any liability therefor existed; and (3) the statute of limitations is a bar to part of appellee's cause of action, if any existed.

■ We pause at this point to notice the preliminary contention that the declaration was bad in substance and the demurrer thereto should have been sustained. The declaration was .carelessly drawn and was perhaps lacking in essential allegations, but the defect in this respect was supplied by defendant's plea. Hence at this stage of the case the defect should not be held prejudicial. United States v. Morris, 10 Wheat. 246, 286, 6 L.Ed. 314; Texas & N. O. R. Co. v. Miller, 211 U.S. 408, 416, 31 S. Ct. 534, 55 L.Ed. 789.

Reverting to the main grounds of argument, we think the questions raised in the 1st and 3rd are foreclosed against appellant by our decisions in Baker v. District of Columbia, 39 App.D.C. 42, and Depue v. District of Columbia, 45 App.D.C. 54, Ann. Cas.1917E, 414. The record shows that Mrs. Pitner was committed to St. Elizabeths Hospital pursuant to the provisions of the Act of February 23, 1905,[1] which authorizes the Commissioners to institute proceedings to determine the mental condition of alleged indigent insane persons and persons alleged to be insane with homicidal or otherwise dangerous tendencies. It also provides: "In case any such person ad-

judged to be of unsound mind has property, real or personal, the equity court of said District shall have full power. in the same cause to appoint a committee or trustee of the person and estate of such person, according to the provisions of this chapter, and such committee or trustee shall reimburse, out of the funds of the lunatic, the District of Columbia for all court costs expended or incurred by it and for all moneys by it expended or costs incurred in caring for and treating such insane person up to the time of such appointment."[2]

■ In the Baker case we had occasion to determine the right of the District Government to recover from the committee out of the lunatic's estate for the cost of maintenance. We then pointed out that originally the hospital was a wholly charitable institution; that in 1861 Congress changed the law to provide that an insane person was made liable for his support to the extent of his ability to pay;[3] and that by the Act of 1905 Congress again changed the law to provide that maintenance thereafter furnished to indigent or dangerous insane persons was to be furnished not as an absolute charity, but upon the condition and expectation of reimbursement if the financial condition of the beneficiary should change. The provision that the committee or trustee of such insane person shall reimburse the District for care and expenses up to the time of the appointment of such committee or trustee was, we said, intended to relate back to the date of the passage of the Act. Upon that date the status of the insane person changed, and he thereafter became liable for the support furnished him, subject only to his ability to pay.

■ And we also said that the necessary effect of the Act was to prevent the running of the statute of limitations, as its provisions were inconsistent therewith.

We repeated these views in the later Depue case, and held that the Act imposed the duty on the committee or trustee to pay maintenance charges up to the date of appointment, and that the expense thereafter became .a liability of the lunatic's estate, to be enforced under the general statutes for

---

[1] 33 Stat. 740, D.C.Code, Tit. 16, secs. 18 and 19, 24 U.S.C.A. §§ 208, 209.

[2] St. Elizabeths Hospital is a United States Government institution, but under appropriate statutes indigent insane persons and insane persons of dangerous tendencies residing in the District of

Columbia are admitted to its benefits, and the expense of their support and treatment is chargeable to the District of Columbia. D.C.Code, Tit. 16, sec. 11 et seq., 24 U.S.C.A. § 202 et seq.

[3] R.S. § 4849, D.C.Code 1929, T. 16, § 15, 24 U.S.C.A. § 205.

the administration of lunatic's property.[4] And we reaffirmed what had been said in the Baker case as to the non-running of the statute of limitations in view of the specific provisions of the 1905 Act.

The law announced in these cases has remained unchallenged for approximately a quarter of a century, and we see no reason to change it. Appellant does not argue that we should, but rests her case rather on the proposition that the committee has settled his accounts and been discharged and is neither liable nor in funds to pay and that there is no provision in the law which expressly imposes the expense upon the lunatic's estate. But we think this argument should not prevail. Mrs. Pitner was committed to the hospital as a lunatic with dangerous tendencies. Presumably she was indigent, for no committee of her estate was appointed. This status continued for eight years and until some six months after the death of her husband. Shortly thereafter a committee of her estate was appointed, and while the record does not show her acquisition of property through her husband's death, obviously in the interim between the death of her husband and the appointment of the committee she did acquire an estate, either through that event or from some other source. The duty of the committee then to reimburse the District was made absolute by the Act, but instead of discharging this obligation the committee filed his report and was discharged, and whatever estate Mrs. Pitner died possessed of passed from him to her administratrix.

■ In these circumstances, it is well established that all unsatisfied claims against the estate, whether legal or equitable, may then be filed in probate proceedings and prosecuted accordingly. Reando v. Mosplay, 90 Mo. 251, 2 S.W. 405, 59 Am.Rep. 13; Eisenhower v. Vaughn, 95 Wash. 256, 163 P. 758; Masters v. Jones, 158 Ind. 647, 64 N.E. 213, 215.

■ The present case is in all respects the same as if no committee had ever been appointed, and it would hardly be contended in such a case that the just claim of the District was thereby defeated. The fact that the court failed to make an order against the committee during the short period of his service cannot be considered as fatal to the right of recovery. Instead, the claim passed as one against the estate in the hands of the administratrix. In Masters v. Jones, supra, it was said: "The mere fact that the claims of appellees were not settled and allowed by the probate court before the guardianship was terminated by the death of the ward certainly cannot serve to deprive the claimants from enforcing them, if legitimate, against the estate of the deceased in the hands of his executor or administrator." See also Carter v. Beckwith, 128 N.Y. 312, 28 N.E. 582.

■ This leaves only the question whether the liability of the husband, if any, for the wife's support and maintenance should change the result. The cases on a husband's liability for the maintenance of an insane wife in a public institution are in conflict. See Martin v. Beuter, 79 W.Va. 604, 91 S.E. 452, 4 A.L.R. 1106, and cases there cited. The question, when it shall arise in the future, will be settled in the District of Columbia by a recent statute. D.C.Code Supp. IV, Tit. 16, sec. 51. In the instant case, however, as we held in the Baker and Depue cases, the obligation is expressly placed upon the estate of the lunatic. Accordingly, we think there was no obligation on the District to pursue the remedy, if it had one—as to which we express no opinion—against the husband or his estate.

Affirmed.

---

[4] D.C.Code, Tit. 16, secs. 2–6.