## DISTRICT OF COLUMBIA v. GRAVES.

### Civ. A. No. 2305–51.

United States District Court
District of Columbia.
April 22, 1952.

Vernon E. West, Corp. Counsel for District of Columbia, Ralph D. Quinter, Jr., Asst. Corp. Counsel, Washington, D. C., for plaintiff.

Elizabeth R. Young, Washington, D. C., for defendant.

KEECH, District Judge.

This is an action by the District of Columbia to recover from the estate of a deceased patient in Saint Elizabeths Hospital the cost of the patient's care for which the District has not been reimbursed.

The decedent, Edward Charlton Graves, was adjudged of unsound mind and committed to Saint Elizabeths Hospital on September 27, 1944. On November 6, 1944, his wife was appointed committee of his person and estate. On March 23, 1945, the committee was ordered, among other things, to pay to the District of Columbia on account of the expenses of the patient's care the sum of $40 per month. This amount was paid to the District of Columbia throughout the period of the patient's confinement. On January 5, 1951, the patient died while still confined at the Hospital. By stipulation dated December 3, 1951, filed in this cause, it was agreed between the parties that the cost of the decedent's care during the period of his confinement at Saint Elizabeths for which the District of Columbia has not been reimbursed, is $4,955.13.

The order of March 23, 1945, providing for payment of $40 per month was based on consideration of the need of the patient's dependent wife for support, and included a provision that the committee should pay to herself the sum of $50 per month for her own maintenance. Subsequently, by order of September 20, 1950, the wife's allotment was increased to $100 per month.

On February 2, 1951, decedent's widow was appointed administratrix c. t. a. of his estate. The District of Columbia filed a claim against the estate for the balance of $4,955.13, which was rejected by the administratrix. The District then filed this suit.

A review of the official files of this court in the mental health and administration proceedings (M. H. No. 27535 and Administration No. 77037) shows the transfer on April 30, 1951, from the committee to the administratrix of cash in the amount of $554.28 and securities valued at $17,452.75, and that a dividend of $137.70 was due on certain stock. It has been stipulated by counsel for the respective parties that the present net value of the estate is $17,245.51.

The defendant filed a motion to dismiss the complaint for failure to state a cause of action on which relief could be granted, and the plaintiff filed a motion for summary judgment. Both motions were denied. At the time the case came on for hearing on the merits, counsel for the plaintiff and defendant moved for reconsideration of their motions, and thereafter filed memoranda supporting their respective views.

On further consideration of the matter, I have concluded that the District of Columbia is entitled to be reimbursed out of the estate of the decedent for the balance of the cost of the patient's care. I hold, fur-

ther, that even if the estate were inadequate to satisfy the entire amount due, the District would be entitled under the statute to a judgment for the entire balance and to be paid its pro rata share out of the proceeds of the estate on the same basis as any other creditor.

The pertinent sections of the District of Columbia Code, 1940 Edition, are §§ 21–307, 21–318, and 21–319.

Section 21–307 provides in part:

"\* \* \* In case any such person adjudged to be of unsound mind has property, real or personal, the equity court of said District shall have full power in the same cause to appoint a committee or trustee of the person and estate of such person, according to the provisions of section 21–301, and *such committee* or trustée *shall reimburse, out of the funds of the lunatic, the District of Columbia* for all court costs expended or incurred by it and *for all moneys by it expended or costs incurred in caring for and treating such insane person* up to the time of such appointment. (Feb. 23, 1905, 33 Stat. 740, ch. 738, § 1.)" (Emphasis supplied.)

It has already been determined by the Court of Appeals that the estate of a deceased insane person is liable under this section for the cost of his confinement. In Fitzhugh v. District of Columbia, 71 App. D.C. 290, 109 F.2d 837, it was held that the 1905 Act changed the law to provide that maintenance thereafter furnished to insane persons was to be furnished not as an absolute charity, but upon the condition and expectation of reimbursement if the financial condition of the beneficiary should change; that the Act made the insane person liable for the support furnished him, subject only to his ability to pay; that the expense of the insane person's maintenance is a liability of his estate, to be enforced under the general statutes for the administration of a lunatic's property; that the statute of limitations is inapplicable; and that an unsatisfied claim for such expense, after discharge of the committee, may be filed in probate proceedings and prosecuted accordingly. The Fitzhugh case did not involve the question of support for dependents. However, it is to be noted that § 21–307 makes no mention of the needs of dependents of an insane person. On the contrary, it specifically states that the committee shall reimburse the District out of the funds of the lunatic "for *all* moneys by it expended or costs incurred in caring for and treating such insane person".

Section 21–318, which was enacted as part of the 1939 revision of the law of the District of Columbia providing for commitment of insane persons, reads:

"The father, mother, husband, wife, and adult children of an insane person, if of sufficient ability, and *the committee or guardian of his or her person and estate, if his or her estate is sufficient for the purpose, shall pay the cost to the District of Columbia of his or her maintenance, including treatment in Saint Elizabeths Hospital or in any other hospital to which the insane person may be committed. It shall be the further duty of said commission, to examine under oath,* the father, mother, husband, wife, adult children, and *committee, if any,* of any alleged insane person whenever such relatives live within the District of Columbia, and *to ascertain the ability of such* relatives or *committee,* if any, *to maintain or contribute toward the maintenance of such alleged insane person: Provided,* That in no case shall said relatives or committee be required to pay more than the actual cost to the District of Columbia of maintenance of such alleged insane person.

"If any person hereinabove made liable for the maintenance of an insane person shall fail so to provide or pay for such maintenance, the court shall issue to such person a citation to show cause why he should not be adjudged to pay a portion or all of the expenses of maintenance of such patient. The citation shall be served at least ten days before the hearing thereon. *If,* upon such hearing, *it shall appear to the court that the insane person has not sufficient estate out of which his main-*

*tenance may properly be fully met* and that he has relatives of the degrees hereinabove mentioned who are parties to the proceedings, and who are able to contribute thereto, the court may make an order requiring payment by such relatives of such sum or sums as it may find they are reasonably able to pay and as may be necessary to provide for the maintenance of such insane person. Said order shall require the payment of such sums to the Board of Public Welfare annually, semiannually, or quarterly as the court may direct. It shall be the duty of the board to collect the said sums due under this section, and to turn the same into the treasury of the United States to the credit of the District of Columbia. Any such order may be enforced against any property of the insane person or of the person liable or undertaking to maintain him in the same way as if it were an order for temporary alimony in a divorce case. (Aug. 9, 1939, 53 Stat. 1298, ch. 620, § 9.)" (Emphasis supplied.)

This section in effect supersedes prior provisions of law as to who shall be liable for the expense to the District of Columbia of caring for insane persons committed to Saint Elizabeths or any other hospital, the procedure for fixing payments on account of such expense, and to whom they shall be paid. It will be noted that this section omits any reference in either of its paragraphs to the need of the patient's dependents for support.

The only language in § 21–318 which might be interpreted as indicating authority to fix payments by the committee at less than the full cost of the patient's care where the funds in the estate are adequate, is the clause "if * * * it shall appear to the court that the insane person has not sufficient estate out of which his maintenance may *properly* be fully be met", appearing in the second paragraph. However, it is this court's view that "properly" should be read as referring, not to adequacy after making allowance for support of dependents, but to the general equity power of the court under § 21–301 of the Code "to make

such orders and decrees for * * * the management and preservation of their (insane persons') estates * * * as to the court may seem proper." This general equity power of the court was discussed in Depue v. District of Columbia, 45 App.D.C. 54, which upheld an order of the lower court permitting the committee to retain sufficient funds to keep certain insurance policies of the patient in force, and to pay the balance of the estate to the District on account of the patient's care.

The fact that the first paragraph of § 21–318 specifically provides that the committee shall pay the cost to the District of Columbia of the patient's care "if his or her estate is sufficient for the purpose," without any qualification or exception, refutes any argument that "properly" is to be interpreted as permitting payment out of the patient's estate if it is adequate after allowance has been made for the support of his dependents.

The only section appearing in the Code which provides for giving consideration to the support of a lunatic's dependents in fixing the amount of payments on account of his maintenance at Saint Elizabeths Hospital, is § 21–319:

"Whenever it appears in the case of any insane person whose insanity commenced while he was a resident of the District of Columbia that his is able to defray a portion, but not the whole of the expenses of his support and treatment in Saint Elizabeths Hospital, the board of visitors of the hospital is authorized to inquire into the facts of the case; and if it appears to the board, upon such inquiry, that such insane person has property and no family, or has more property than is required for the support of his family, than, as a condition upon which such insane person, admitted or to be admitted upon the order of the Secretary of the Interior, shall receive or continue to receive the benefits of the hospital, there shall be paid to the superintendent from the income, property, or estate of such insane person such portion of his expenses in the hospital as a majority

of the board shall determine to be just and reasonable, under all the circumstances. (R.S. § 4849; July 1, 1916, 39 Stat. 309, ch. 209, § 1.)"

Although the Commission on Mental Health and the court in administering § 21–318 have followed the policy prescribed in § 21–319 and have given consideration to the need of an insane person's dependents in determining what amount shall be paid out of his estate on account of his care, it is the view of this court that § 21–319 was repealed by the enactment of the 1939 Act, which provided in terms for repeal of inconsistent statutes. In enacting § 21–318, the Congress specifically prescribed the method of ordering payments to the District by the committee and other persons on account of an insane person's care at Saint Elizabeths, and omitted any reference to allowing support for the patient's dependents.

Although the Court of Appeals in Hart v. Commissioners, 81 U.S.App.D.C. 154, 155 F.2d 877, refers to the "primary obligation" of a living insane person's estate for the support of his wife and minor children, that case did not involve the question of the liability of a deceased patient's estate. It may be pointed out, further, that the opinion shows that the order allowing support to the wife was signed in 1910, when § 21–319 was in effect, and that the necessity for support of dependents ceased some time prior to 1940.

The court concludes from a study of the applicable statutes that payments by the committee during the lifetime of an insane person on account of the cost of his care do not affect the continuing obligation of the patient's estate for the total cost of his care; that the estate of a deceased insane person is liable for any portion of the cost of his care for which the District has not been reimbursed; that in rendering judgment for the unpaid balance the court has no more authority to consider the need of the deceased patient's dependents for support than in the case of any other debt of the deceased person.

Although it is unnecessary to determination of the case at bar, it is this court's view that authority no longer exists for allowing support to dependents in fixing the amount of payments to the District on account of the cost of the care of an insane person out of his estate during his lifetime.

While it may have been the legislative intent to preserve the policy of § 21–319 of scaling payments to the District with due consideration to the patient's liability for the support of his dependents during his lifetime, one would have to go beyond the bounds of permissible judicial construction to determine that the 1939 Act did in fact preserve such authority.

The court is conscious that the conclusions here reached, both as to the District's right to reimbursement out of a deceased insane person's estate and as to the District's right to payment out of a living insane person's estate without regard to any need of his family for support, are harsh and undesirable, and may result in hardship to the patient's family without any net benefit to the District of Columbia.

It should be pointed out, however, that, even had the court held that authority exists to consider the needs of a patient's dependents in determining what amount the District of Columbia shall recover from a deceased patient's estate, the facts in the present case would warrant a judgment for the District of Columbia in the full amount claimed.

The financial condition of the decedent's widow, his only surviving dependent, has been stipulated by counsel. She owns her home, which was purchased in 1946 for $7,500 and is assessed at $6,625, and also certain shares of stock in various companies. She owns and operates an herb medicine business formerly owned and operated by her deceased father. The actual value of the business is not known, but the income has steadily decreased since she inherited the business in 1944. In 1951 she received an income of $1,338.64, consisting of widow's annuity of $506.64 under the Civil Service Retirement Act, [5 U.S.C.A. § 691 et seq.], rental of one room in the amount of $360, income from herb business $300, and dividends of $172 on the stock owned

by her. In addition, she was beneficiary of approximately two-thirds of the decedent's life insurance, the total amount of which was $10,563.78, making her share about $7,040.

It is further stipulated that the widow is now sixty-seven years of age and has. a life expectancy of 10.48 years.

The 1951 income from the stocks held by decedent's estate was $775.

If the total claim of the District of Columbia, $4,955.13, is paid out of the decedent's net estate of $17,245.51, the widow will receive a balance of $12,290.38.

From the foregoing, it appears that the widow's own financial condition, the amount of decedent's estate, and the widow's life expectancy are such as to warrant a finding that the widow would have adequate funds for her support remaining after payment of the entire amount due the District of Columbia. It is not unreasonable that a person of the widow's age draw on the corpus of her estate, if need there be.

Counsel will present an order granting the plaintiff's motion for summary judgment.