**DISTRICT OF COLUMBIA, Plaintiff,**

v.

**Lawrence P. MOXLEY, Administrator of the Estate of Walter Carroll Moxley, Defendant and Third-Party Plaintiff,**

v.

**Dr. Charles MEREDITH, Superintendent of St. Elizabeth's Hospital, Third-Party Defendant.**

Civ. A. No. 78–1797.

United States District Court, District of Columbia.

April 26, 1979.

Hugh O. Stevenson, Asst. Corp. Counsel for the District of Columbia, Washington, D.C., for plaintiff.

Robert J. Sher, Chevy Chase, Md., for defendant and third-party plaintiff.

Earl J. Silbert, U. S. Atty. for the District of Columbia, Ann DuRoss, Asst. U. S. Atty. for the District of Columbia, Washington, D.C., Michael English, of counsel, Office of the Legal Advisory, St. Elizabeth's Hospital, for third-party defendant.

## MEMORANDUM

SIRICA, District Judge.

This case is before the Court on the motion of the federal third-party defendant, Dr. Charles Meredith, to dismiss the third-party complaint for failure to state a cause of action. For the reasons discussed below, the Court will grant the motion and remand the case to the Superior Court of the District of Columbia, where it was originally filed.[1]

### I.

This action originated as a claim by the District of Columbia against the estate of Walter Carroll Moxley, deceased, for costs of his care and treatment at St. Elizabeth's Hospital paid by the District during his confinement there. Lawrence Moxley (hereinafter Moxley), the administrator of the estate, contests the liability of the estate for these costs, and, in addition, has impleaded Dr. Meredith (hereinafter Meredith) in his official capacity as superintendent of St. Elizabeth's. Moxley claims that if the estate is found liable for the costs of care and treatment, then Meredith should be found liable to the estate for failing to advise the decedent that he could have received the same care and treatment he received at St. Elizabeth's elsewhere, at no expense.

The decedent, a District resident, was committed to St. Elizabeth's Hospital by court order in 1968[2] and was treated there intermittently until 1977. Pursuant to that order, the expenses of his treatment at St. Elizabeth's, a federal institution, were to be borne by the District of Columbia under the terms of D.C. Code 1967 §§ 32–401, 32–405, except to the extent that his relatives or his estate, as provided by D.C. Code 1967

---

1. The case was removed to this Court from the Superior Court, pursuant to 28 U.S.C. § 1442(a)(1) (1976), solely because of the addition of the federal third-party defendant as a party.

2. *In the Matter of Walter Moxley*, MH 90–68, Order of March 8, 1968 (D.D.C.) (Curran, J.)

§ 21–586, were able to pay for his care.[3] After deductions for costs covered by Medicare, the total amount paid by the District for this treatment came to $10,479.93, according to its complaint. The District now seeks to recover this amount, plus interest and costs, from the decedent's estate under the terms of D.C. Code 1973 § 21–586. This section provides that:

> The father, mother, husband, wife, and adult children of a mentally ill person, if of sufficient ability, and the estate of the mentally ill person, if the estate is sufficient for the purpose, shall pay the cost to the District of Columbia of the mentally ill person's maintenance, including treatment, in a hospital in which the person is hospitalized under this chapter. . . .

Moxley opposes this claim on the merits, but, as noted above, has also filed a third-party claim against Meredith based on an indemnification (or contribution) theory.

Moxley premises his third-party negligence action against Meredith on three alleged negligent failures or omissions of the hospital and its staff: First, that the hospital failed to advise the decedent that he could have received the same care he was receiving at St. Elizabeth's at another institution at no cost, since he was both a veteran and disabled. Second, that it failed to advise him that his Veterans Administration and Social Security benefits would not cover the cost of his treatment at St. Elizabeth's. Third, that the hospital failed to bill him for services rendered. Moxley concludes that, as a result of its negligence, the hospital should be liable to him for any amount he is adjudged to owe the District of Columbia for the decedent's care.

Meredith's rejoinder, and the basis for this motion to dismiss, is that the hospital "had no duty recognized by law to perform the services and supply the information that constitute the basis for the Third-Party Complaint." Third-Party Defendant's Motion to Dismiss, at 2. Absent some showing that a legal duty existed, he argues, the plaintiff has failed to state a cause of action in negligence, and the action must be dismissed. *Id.* at 3.

## II.

■ The Court's inquiry in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is limited. In *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969), the Supreme Court described it as follows:

> For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted. And, the complaint is to be liberally construed in favor of plaintiff. The complaint should not be dismissed unless it appears that appellant could "prove no set of facts in support of his claim which would entitle him to relief." [citations omitted][4]

Thus, the party defending the motion bears only a very light burden. Moxley has been unable to carry even this burden, however, since it appears that Meredith is correct in his assertion that, as a matter of law, the hospital had no legal duty to advise the decedent in the manner Moxley would have wished. There being no legal duty, there can be no cause of action for negligence.

## A.

The Court will first examine Moxley's claim that the hospital had a duty to present decedent with a bill for services rendered. The Court will assume, as it must, that no bill was submitted. Even so, it is clear that any duty there might be to submit a bill would have to be ascribed to the District of Columbia, not Meredith.

It is the District of Columbia's statutory responsibility to pay for the care and treat-

---

**3.** *Id.*

**4.** In general, the Court is confined in its inquiry to the complaint and items of record in the case. It may, however, take judicial notice of matters of general public record. *Phillips v. Bureau of Prisons*, 192 U.S.App.D.C. 357 at 360, 591 F.2d 966 at 969 (1979); 5 C. Wright & A. Miller, Federal Practice, § 1357 at 593 (1969). In this case, the Court has taken judicial notice of Walter Moxley's judicial commitment to St. Elizabeth's Hospital. See notes 1 & 2, *supra.*

ment of its residents who are mentally ill and indigent.[5] D.C. Code 1973 §§ 32–401, 32–405. Ordinarily, then, a person who is found by the court to be mentally ill and indigent and who is committed to a hospital will never have to pay for his care. In the eventuality that the patient's estate, or certain of his relatives, are able to pay some or all of the costs of his care, however, the District may seek to recoup its expenses from them under the terms of D.C. Code 1973 § 21–586. In this case, the decedent received a small Veteran's pension which accumulated over the years of his treatment, leaving a small estate against which the District is now proceeding.

■ The District of Columbia's only relationship with St. Elizabeth's Hospital is, in a manner of speaking, like that of general contractor to sub-contractor. That is, since the District does not have the facilities to provide for the care of its mentally ill, it has an arrangement with St. Elizabeth's (by statute) whereby St. Elizabeth's will provide the needed care and bill the District for it. D.C. Code 1973 §§ 32–401, 32–405; *Fitzhugh v. District of Columbia*, 71 U.S. App.D.C. 290, 109 F.2d 837 (1940). St. Elizabeth's has no duty, or right to try to recover costs of treatment from the patient; its financial relationship is solely with the District. *See* D.C. Code 1973 §§ 32–401, 32–405. Thus, if there is any duty to bill the decedent or others responsible for his care, a question on which the Court expresses no opinion, it must necessarily rest with the District of Columbia and not St. Elizabeth's Hospital.

### B.

Moxley's claims that the hospital should have advised the decedent that free treatment was available elsewhere and that his Veterans' Administration and Social Security benefits would not cover the cost of his

care at St. Elizabeth's both involve the question whether the hospital had any common law or statutory duty to advise its patient on the relative financial advantages and disadvantages of his treatment at St. Elizabeth's, as opposed to some other institution or facility. Although for the purposes of his motion the Court will assume that alternative care at less expense was available and that the hospital was aware both of its existence and decedent's eligibility for it, the Court still can discern no legal or equitable duty on the hospital to provide such advice.

Moxley argues in his opposition to Meredith's motion to dismiss that D.C. Code 1973 § 21–587 places an affirmative duty on the hospital to transfer a patient eligible for treatment at a Veterans' Administration hospital facility to that facility. That section provides:

This chapter does not require the admission of a person to a Veterans' Administration or military hospital facility unless the person is otherwise eligible for care and treatment in the facility.

Relying on the plain meaning of the statute, Moxley argues that since the decedent was "otherwise eligible," St. Elizabeth's was required to *transfer* him to the Veterans' Hospital. He cites no case law or legislative history to support this interpretation.

This section, in fact, has a much different meaning. It was enacted in 1964 as part of the Hospitalization of the Mentally Ill Act, Pub.L.No. 88–597, § 10, 78 Stat. 1944, a piece of legislation intended by Congress to make substantial reforms in the protection of the rights of both civilly committed and voluntary mental patients.[6] Section 4 of the Act provided for the first time that public hospitals in the District of Columbia must accept voluntary patients for treat-

---

**5.** The court order committing Walter Moxley to St. Elizabeth's Hospital implicitly found him to be an indigent insane person, since it ordered that the District of Columbia bear the expenses of his hospitalization. *In the Matter of Walter Moxley, supra*, n. 1.

**6.** S.Rep.No. 925, 88th Cong., 2d Sess. 9 (1964); H.R.Rep.No. 1833. 88th Cong., 2d Sess. 2 (1964).

ment.[7] Prior to its enactment the decision whether or not to accept a voluntary mental patient had been a discretionary one entrusted to the administrator of the hospital involved.[8]

If Congress had enacted section 4 alone, however, it would have required Veterans' Administration and military hospitals in the District to accept any voluntary patient for treatment, regardless of whether or not he had any affiliation with the military. Since Congress did not want to open the doors of these hospitals to patients who did not meet existing requirements as to military service, etc., it added section 10, now codified as section 21–587 of the D.C. Code, to clarify its intent.[9]

Moxley's reading of this language as an affirmative requirement that eligible patients be transferred to Veterans' Administration or military facilities is thus totally at odds with the legislative history. It is quite clear that the section was intended as an *exemption* for Veterans' Administration and military facilities from the broad requirement of section 4, not as an affirmative requirement that other public hospitals transfer eligible patients to them.[10] The Court concludes, then, that the statute placed no duty on St. Elizabeth's Hospital to transfer Walter Moxley to a Veterans' Administration or military facility.

## C.

Moxley also suggests that there may be a common law duty for the hospital to advise its patients on the financial advantages and disadvantages of their treatment there, stemming from the asserted fiduciary relationship of hospital and patient. He cites no authority establishing such a duty, however, and the Court can find none.

Unspoken, but implicit, in his argument is the thought that if the Court finds no such duty, it should imply one. Setting aside for the moment the judiciary's traditional reluctance to imply affirmative duties, see W. Prosser, Law of Torts, § 56 at 340 (4th ed. 1971) and cases cited, the Court acknowledges that there are some arguments to be made for this contention. A mental hospital stands in a peculiar position with regard to its patients. Because its patients are oftentimes unable to handle their own affairs, the hospital must regulate their lives in a far more comprehensive way than would be true for a patient without mental illness in an ordinary hospital. It could be argued that because the hospital assumes such complete control over mental patients' lives, it stands, by necessity, in a fiduciary relationship with them, acting almost as a de facto guardian. Under such a view, it would incumbent upon the hospital to protect its ward from financial, as well as physical, harm.

The difficulty with implying a duty, however, is that this area is already regulated by a specific statutory scheme. The Hospitalization of the Mentally Ill Act had as one of its central purposes the goal of assuring that patients hospitalized under the Act would not automatically be deprived of

7. Hospitalization of the Mentally Ill Act, § 4(a), D.C. Code 1973 § 21–511; S.Rep.No. 925, *supra*, n. 5, at 11–12; H.R.Rep.No. 1833, *supra*, n. 5, at 5.

8. D.C. Code 1961, § 32–412.

9. Remarks of Senator Ervin in introducing the bill. 109 Cong.Rec. 3117 (1963). Senator Ervin (and others) *originally introduced the bill* (S. 3261) in the 87th Cong., 2nd Sess. Work on it was not completed, and he reintroduced the same bill in the 88th Cong., 1st Sess. (S. 935). His committee (Senate Judiciary Committee) *held hearings and reworked the bill. See* S.Rep.No. 925, *supra* n. 5, at 1–9. The section dealing with Veterans Hospitals was never

changed, however, except as to its section number and heading. In introducing the original bill Senator Ervin said of this section:

> Section 8 *exempts* application of this Act to admissions of individuals, unless otherwise eligible, to Veterans' Administration or military hospitals. [emphasis added]

This is the only gloss on the section's meaning in the Act's legislative history, and makes it quite clear that the section was added solely as a modification of the requirement of mandatory admission of voluntary patients by public hospitals in the District of Columbia.

10. *Id.*

their basic constitutional rights.[11] Prior to its enactment, persons committed to a hospital for the treatment of mental illness were automatically adjudged incompetent and stripped of their basic rights as citizens.[12] A major reform brought about by the Act was to require that competency be determined in a separate hearing. This assured that persons committed to a mental hospital would retain certain rights unless they were specifically adjudged to be incompetent to exercise them. The Act provides that mental patients hospitalized under its terms:

> may not, by reason of the hospitalization, be denied the right to dispose of property, execute instruments, make purchases, enter into contractual relationships, vote, and hold a driver's license, unless the patient has been adjudicated incompetent by a court of competent jurisdiction and has not been restored to legal capacity.

D.C. Code 1973 § 21–564(a). Thus, the hospital is prevented by law from treating its patients as wards prior to an adjudication of incompetency.

 For the same reasons, even after a patient has been adjudged incompetent, the Court cannot imply a duty for the hospital to assume the function of fiduciary as to his property or personal welfare (except, of course, to the extent that the hospital must carry out its statutory mandate[13] to provide the patient with adequate medical and psychiatric care and treatment). Again, there is a specific statutory scheme designed to control this area. Sections 21–1501 through 21–1503 of the D.C. Code provide that if a mentally ill person is adjudged incompetent, the court may appoint a conservator to act in a fiduciary capacity with regard to the patient's property. In addition, if the court finds it necessary, it may order the conservator, or some other person, to be responsible for the personal

welfare of the patient, as well. D.C. Code 1973 § 21–1506.

Thus, it is apparent that there is an adequate legal mechanism to protect and provide for an incompetent person in his financial affairs. The hospital's only duty under this scheme is that its chief of service must notify the patient, his attorney, legal guardian, certain relatives, the Superior Court of the District of Columbia, the Commission on Mental Health, and the Mayor of the District of Columbia if he is of the opinion that the patient is unable to exercise any of the rights mentioned above. D.C. Code 1973 § 21–564(a).

It is true that, because the statute assigns none of those notified the responsibility of petitioning the court for the appointment of a conservator, there may be cases where one is needed, but none is appointed. For instance, where the mentally ill person's estate is small, or where it consists only of benefits valuable solely to him, it is possible, and even likely, that no one will petition for conservatorship.

One could argue that since the hospital is in the best position to know whether its patient is competent to handle his own affairs, it should have a duty to petition for the appointment of a conservator when it appears to be in the best interest of the patient. But the Court feels that to impose such a duty in an area occupied by a specific and comprehensive statutory scheme would be to usurp Congress' function. If Congress had intended to place this duty on the hospital, it would have done so in specific statutory language, as at least one other legislature has done.[14] Instead, it elected to impose a detailed and extensive notice requirement on the hospital to inform those most interested and involved in the patient's welfare of the hospital's opinion that he is not competent. Such persons or enti-

---

11. 109 Cong.Rec. 3114 (1963) (Introductory remarks by Senator Ervin); S.Rep.No. 925, *supra* n. 5, at 10–11; H.R.Rep.No. 1833, *supra* n. 5, at 3–5.

12. *Id.*

13. Hospitalization of the Mentally Ill Act, § 9, D.C. Code 1973 § 21–562; *Rouse v. Cameron,* 373 F.2d 451 (D.C. Cir. 1967).

14. See New Hampshire Revised Statutes Annotated, § 135–B:42 (Supp.1975); *In the Matter of Albert Gamble,* N.H., 394 A.2d 308 (1978).

ties may then act under section 21–1501, which allows anyone to petition the court to appoint a conservator. There is no hint in the statute of any further duty on the hospital in this regard, and the Court must conclude that there is none.

## D.

Finally, Moxley makes a very brief argument in his opposition to the motion to dismiss that even if the hospital had no common law or statutory duty to advise the decedent on financial matters, it should be held liable in this case because it voluntarily undertook to do so and then abandoned its effort. While Moxley does not articulate the legal basis of this argument, the Court assumes he is alluding to the tort doctrine summed up in section 323 of the Restatement (2d), Torts (1965). This section states that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.[15]

Moxley states his belief that the hospital has regularly advised other patients on financial matters in the past, and that it had, at one point, questioned the decedent's need for continued treatment at St. Elizabeth's. He contends that: "[b]y its motion, the Hospital now seeks to abrogate a duty which it had, in fact, undertaken, whether or not it was legally obligated to do so." Opposition to Third-Party Defendant's Motion to Dismiss, at 2.

The Court observes that the harm, if any, suffered by decedent was originally caused by the fact that the committing court ordered him committed to St. Elizabeth's Hospital rather than the Veterans' Administration Hospital or some other facility where he could have received free treatment. St. Elizabeth's cannot be held accountable for that. The only possible charge against the hospital, then, is that it failed to relieve this harm by discovering the decedent's eligibility for Veterans' benefits and transferring him to the Veterans' Administration Hospital.

■ Moxley does not allege, however, that the hospital, by inquiring into the decedent's financial situation, either increased the risk of harm to him or induced his reliance on its undertaking. Thus, he has failed to state a cause of action, since one or the other of these allegations is a necessary element of the tort. *See Bartolotta v. Liberty Mutual Ins. Co.,* 411 F.2d 115, 119 (2d Cir. 1969); *H. R. Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 159 N.E. 896, 898–99 (1928) (Cardozo, J.); Restatement (2d), Torts, § 232 and comment (c) (1965). There is no independent requirement that the volunteer complete the task he has begun, as Moxley appears to assume. In fact, the basic formulation of the rule in the Restatement establishes that the volunteer may abandon the undertaking at any time, unless by acting he has put the aided person in a worse position than he had been in before. Restatement (2d), Torts, § 323, comment (c) (1965).[16] Since Moxley alleges

---

**15.** The Restatement's emphasis on physical harm would seem to take this case out of the rule immediately. However, because the line between voluntary undertakings to aid one in peril, which generally involve risk of bodily harm, and gratuitous promises, which often involve financial harm, is unclear, *see* W. Prosser, Law of Torts, § 56, at 344–46 (4th ed. 1971) and cases cited, the Court will assume for the moment that the general rule might apply to a case such as the one at hand. The outcome of the Court's analysis under the general rule ob-

viates the necessity of any further inquiry into the application of the rule to financial harms.

**16.** *But see* comment (e). There may be situations where, even though the imperiled person's situation is not worsened, there is a duty to act. The example given is where a rope is thrown to a drowning person and then the attempt to give aid is unreasonably abandoned. Even this possibility is confined, however, to those situations where to withdraw would create an unreasonable risk of serious harm to the

only that the hospital abandoned its undertaking, not that it placed him in a worse position, the Court concludes that his argument on this theory is not sufficient to thwart the motion to dismiss.

### III.

Having determined that the hospital had no duty to bill the decedent or advise him on the financial advantages and disadvantages of his treatment at St. Elizabeth's, as opposed to some other institution, the Court will dismiss the third-party complaint against Dr. Meredith with prejudice for failure to state a claim on which relief can be granted. Since the dismissal will remove Dr. Meredith, the party whose presence established federal jurisdiction, from the case, the Court will remand it to the Superior Court of the District of Columbia where it was originally filed.

Although under the doctrine of pendent jurisdiction the Court could exercise its discretion to retain the remainder of the action for disposition, both principles of comity and the interests of justice dictate that needless decisions of state law be avoided. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Since there are no countervailing considerations of judicial economy, convenience, or fairness to the litigants, the best course is to remand the case. *Id.; Peroff v. Manuel,* 421 F.Supp. 570, 571 (D.D.C.1976).

imperiled person. The situation involved in this case cannot be regarded as "serious" in the

sense contemplated by the example in the Restatement.